Morris *v.* Henderson.

———•-••-•⁍———

HENRY H. MORRIS *v.* WILLIAM ST. J. E. HENDERSON.

1. CIRCUIT COURT : PRACTICE : REVIVOR.—An entry in the minutes of the court, suggesting the death of the plaintiff, and ordering "that the cause be revived in the name" of the executor, "and that *scire facias* issue to that effect," is not a revivor of the suit in the name of the executor; and if no step be taken to carry out said order, by the issuance of a *scire facias*, a subsequent revivor of the suit in the name of the devisee of the original plaintiff will not be affected by reason of the previous order.
2. EVIDENCE : UNRECORDED DEED.—Whether a certificate of acknowledgment of an unrecorded deed, is competent evidence of its execution and delivery. *Quære ?*.
3. SAME : POSSESSION OF DEED PRESUMPTIVE EVIDENCE OF DELIVERY.—The possession by the grantee, or his devisee, of an unrecorded deed, and its production on the trial by him, is presumptive evidence of its delivery.
4. PRACTICE : OBJECTIONS TO EVIDENCE MUST BE SPECIFIC.—Objections to the introduction of evidence, which, from their nature, may be obviated by the party offering it, must be distinctly stated on the trial; otherwise, they will not be noticed in this court. See *Wesling* v. *Noonan*, 31 Miss. R. 599.
5. EVIDENCE: PLEADING: ALLEGATION IN ONE PLEA NOT EVIDENCE TO OVERTURN ANOTHER.—The rule is well settled at common law, that where there are several distinct pleas to an action, the issue on each must be distinctly tried; and an allegation in one plea is not to be taken as an admission of a fact distinct from the proof of the issue upon that plea. The rule is the same under the Pleading

Morris *v.* Henderson.

Act of 1850, where *several distinct matters of defence are set up in the answer;* and hence, it will be error to allow the plaintiff in an action of ejectment under that act, to which the defendant has answered by a general denial, and also, by setting up a claim for improvements made on the lands, to read the latter answer in evidence to prove possession of the *locus in quo* by defendant.

6. LEVEE LAWS: ACTS OF 1850 AND 1854: TAX DEED.—So much of the Act of the 30th of November, 1850 (Session Laws, 28), as authorizes the tax collector to execute an absolute deed in fee simple for land sold for the collection of levee taxes, is repealed by the Act of the 1st of March, 1854 (Session Laws, 114); and an absolute deed executed in pursuance of the former act, but on a sale made after the passage of the latter, is void.

7. CHAMPERTY AND MAINTENANCE: RULES OF, DO NOT APPLY AS BETWEEN FATHER AND SON, ETC.—The rules in relation to champerty and maintenance do not apply to conveyances or devises between father and son, husband and wife, brothers, &c. See Kent Com. 7th edit., 449, note b.

8. WILL: RESIDUARY CLAUSE: EFFECT OF AS TO REALTY AND PERSONALTY.—In a will of personalty, a general residuary bequest carries not only everything not disposed of, but everything that is ill disposed of, or that by lapse, or any other casualty, may fall into the residuum ; but a general residuary devise, in a will of realty, only carries the real estate which is not disposed of, nor attempted to be disposed of, specifically by the will.

9. SAME: SAME: MEANING OF TERM "PROPERTY:" REAL ESTATE PASSES UNDER IT.—The term "property" embraces both real and personal estate ; and under it, when used in a general residuary clause in a will, the real estate of the testator, not attempted to be specifically disposed of, will pass. See *Doe* v. *Langlands,* 14 East. 370 ; *Doe* v. *Morgan,* 6 Barn. & Cress. 512 ; 13 E. C. L. 235.

10. SAME: SAME: CASE IN JUDGMENT.—The testator, in the introductory part of his will, enumerated what he terms the "principal" part of his estate ; he then disposed of the property so enumerated, and also other property which was not mentioned, except in the clause disposing of it ; and concluded his will as follows : "All else of my property and effects, I will and bequeath all to my son E." Held, that under this clause, real estate of the testator, not mentioned or described in the will, passed to the devisee.

ERROR to the Circuit Court of Washington county. Hon. J. S. Yerger, judge.

John Henderson brought this action, under the Pleading Act of 1850, against the plaintiff in error, for the recovery of section 4, township 19, range 9 west, in Washington county; and claimed rent for the occupation of it for three years by the defendant, at the rate of $500 per annum.

Defendant answered, 1st. By a general denial of the allegations of the complaint; and 2d. In answer to so much of the com-

plaint as claimed rent, the defendant denied that the rent was worth $500 or any other sum; and claimed that the improvements made by him in clearing land, ditching, &c., were worth more than $1500; and alleges that the improvements were made before notice of the plaintiff's intention to sue; and asked that the same might be set-off against the rent.

At the November term, 1857, the following entry was made on the minutes of the court: "This day came the parties by their attorneys, and the death of plaintiff being suggested and admitted, it is considered by the court that the cause be revived in the name of St. John Elliott Henderson, as executor of the last will and testament of John Henderson, deceased; and that *scire facias* issue to Harrison county to that effect."

At the May term, 1859, the court ordered, on motion of plaintiff's counsel, "that this cause be revived in the name of William St. John Elliott Henderson."

Afterwards there was a trial, which resulted in a verdict and judgment for plaintiff. The defendant moved for a new trial; which being refused, he tendered his bill of exceptions, from which the following appears.

Plaintiff read in evidence a patent from the United States conveying the *locus in quo* to John Henderson and John Black.

He then offered to read in evidence a deed from Black, conveying his interest in the land to said Henderson. This deed is dated 10th July, 1837, and had never been recorded; and the acknowledgment thereon is as follows:—

State of Mississippi, Hinds county:

Personally appeared before me, Richard L. Dixon, clerk of the Superior Court of Chancery, John Black; who acknowledged that he signed, sealed, and delivered the foregoing instrument as his act and deed; and for the objects and purposes therein expressed.

[L. S.]        R. L. DIXON, *Clerk.*

"To which" (as the bill of exceptions recites) "the defendant objected." The court overruled this objection, the deed was read, and the defendant excepted.

Plaintiff then offered in evidence the will of John Henderson,

Morris *v.* Henderson.

the material parts of which are as follows : " My property consists principally in landed estate at and near Pass Christian, and some fragments of land in Attala and Leake counties; also fifteen slaves ; personal property in and about my household establishment at Pass Christian, and a considerable interest in claims and debts due, though several of them of contingent and uncertain value."

The will then proceeds to devise his landed estate at and near Pass Christian equally among his wife and their children. The testator then disposes of his law and miscellaneous library, his slaves, carriage and horses, and household furniture, and of certain Cuban bonds, and stock in the Grand Junction Canal ; mentions what debts he owes, and states that his debts can be paid out of claims due him, of which he will make out a list ; and then proceeds as follows : " Of the fragments of lands in Attala and Leake counties, I bequeath them all to Elliott (his son) in fee simple to sell and pay debts. All else of my property and effects I will and bequeath all to my son Elliott for his mother's exclusive use ; and I appoint my said son Elliott sole executor of this my last will," &c.

This will appears to have been duly admitted to probate and record in October, 1857.

To the reading of which the defendant objected ; but his objection was overruled, and he excepted.

The plaintiff then read in evidence, against the objection of defendant, the 2d answer of defendant to the complaint.

Plaintiff then introduced two witnesses, whose testimony tended to show that the defendant was in possession of the *locus in quo* when the suit was brought; but the testimony of these witnesses did not show that fact very satisfactorily.

The defendant offered to read in evidence a deed from the sheriff and tax-collector of Washington county, dated 9th March, 1854 ; by which the *locus in quo*, was conveyed in fee simple and absolutely, to one Beall, in pursuance of a sale of the land that day made, for the collection of the levee tax due thereon for the year 1853.

To the introduction of this deed in evidence the plaintiff objected. The court sustained the objection, and the defendant excepted.

The defendant read in evidence deeds by which it appeared that

the *locus in quo* was conveyed by Beall to Ervart on 15th April, 1854; and by Ervart to Gains & Robertson on the 5th March, 1855; and by Gains & Robertson to Roper, on 22d August, 1856; and by Roper to defendant on 14th June, 185–. This was all the evidence introduced by defendant; and, after he announced he would introduce no more evidence, the said deeds were, on motion of plaintiff, excluded from the jury, and the defendant excepted.

The 1st, 2d, and 3d instructions given for plaintiff are set out in the opinion of the court. The remaining charges necessary to be noticed are the 5th given for plaintiff, and the 1st, with its modification by the court, given for the defendant. The 5th instruction for the plaintiff is as follows :—

5th. It is necessary to establish the fact of actual possession or occupation by the defendant at the time this suit was commenced, either by himself, his servants, or agents. This fact of actual occupation or possession may be made out by any legal evidence which satisfies the jury that the fact was so. The claim of ownership of the land alone will not be sufficient to establish the fact of possession, but that may be considered with the other facts before the jury, tending to prove such possession; and upon the whole evidence in the case the jury are to make up their opinion, as to the question of possession by defendant at the time suit was commenced.

The defendant's 1st instruction as asked by him is as follows :—

" 1st. That it was incumbent upon plaintiff to prove that the defendant was in the actual possession of the land in the declaration mentioned at the commencement of this suit; and unless the jury are satisfied from the evidence that the defendant was in the actual occupation of the said land, they will find for defendant."

The court refused to give this instruction as asked, but gave it after modifying it as follows :—

" 1. That it was incumbent upon the plaintiff to prove, as explained in the 2d, 3d, and 5th instructions given for plaintiff, that the defendant was in the actual possession of the land mentioned in the declaration, mentioned at the commencement of this suit; and unless the jury are satisfied from the evidence that the defendant was then in the actual occupation of said land, as explained in instructions Nos. 2, 3, and 5, given for plaintiff, they will find for defendant."

*W. L. Nugent,* for plaintiff in error,

Filed an elaborate brief, in which he made the following points:—

1. The suit was revived in the name of Elliott Henderson as executor, and afterwards in the name of said Elliott individually. This was error. *Smart* v. *Early,* 5 J. J. Marsh. 215; *Masters* v. *Martin,* 3 B. Munroe, 176.

2. The deed from Black to Henderson should not have been admitted; it was never recorded, and its execution and delivery should have been proven. *Galusha* v. *Sinclair,* 3 Verm. 394; *Patten* v. *Reilly,* Cooke R. 119; *Doe* v. *Reed,* 2 Scam. 371; *Bledsoe* v. *Doe, ex Dem. Little,* 4 How. 13; *Porter* v. *Buckingham,* 2 Harring. 197.

3. The court erred in permitting the 2d plea of defendant to be read in evidence. Both pleas were allowable, and one could not be read in evidence to overturn the other; and most especially could not this be done in this case, as the 2d plea was an answer only to a claim for mesne profits, which claim had been abandoned by plaintiff. *Evans* v. *Graves,* 2 M. & W. 641; *Bennis* v. *Davison,* 3 Id. 179; *Frasier* v. *Welsh,* 8 Id. 635.

4. The tax-collector's deed was improperly excluded. This deed was made in pursuance of the Act of 1850. This act was not repealed by the Act of 1854; there is no express repeal of it in the latter act, and repeals by implication are not favored. *Richards* v. *Patterson,* 30 Miss. R. 586. All the statutes on the same subject will be construed together, and a harmonious interpretation adopted if possible. *Planters' Bank* v. *The State,* 6 S. & M. 628; *White* v. *Johnson,* 23 Id. 74; *Scott* v. *Searles,* 1 S. & M. 590; Dwar. on Stat. 582–587–593–597, 2d ed.; Co. Lit. 360; 1 Bl. Com. 91; *Mendon* v. *Worcester,* 10 Pick. 235; *Northern* v. *Bokenham,* 11 Mod. 148; *Holbrook* v. *Holbrook,* 1 Pick. 248; *Murray* v. *Gibson,* 15 How. (U. S.) 421; *Ayres* v. *Knox,* 7 Mass. 306; *Putnam* v. *Langly,* 11 Pick. 487; *U. S.* v. *Fisher,* 2 Cranch. 358; *Stowell* v. *Zouch,* Plow. 353. Again, the deed if void, together with the others excluded, should have gone to the jury to establish adverse possession of the land, and thereby avoid the devise to plaintiff. See *Bledsoe* v. *Doe, ex Dem. Little,* 4 How. 13; *Ellis* v. *Doe,* 11 S. & M. 422; *Tegarden* v. *Carpenter,* 36 Miss. R. 404. A

devise of lands of which testator is disseised at the time of his death is void. *Southwick* v. *Jordan*, 15 Miss. 113

5. The title of Elliott Henderson depends on the residuary clause of his father's will. This clause does not devise the land in controversy. *Vick* v. *McDaniel*, 3 How. 341; *James and wife* v. *James et al.* 4 Paige Ch. R. 115; *Wright* v. *Hall*, Fortesque's R. 182; 1 Dana R. 206; Ambl. R. 325; *Green* v. *Dennis*, 6 Conn. R. 293; 23 Miss. R. 254.

6. The court erred in refusing defendant's 1st instruction, and giving 2d, 3d, and 5th instructions for plaintiff.

*W. P. Harris*, on same side,

Cited 2 Phil. Ev. (C. & H's. notes) 441, to show that the court erred in permitting the 2d plea of defendant to be read in evidence; and he relied on *Timewell* v. *Perkins*, 2 Atk. 102; *Canfield* v. *Gilbert*, 2 East R. 251; *Robb* v. *Pengoe*, 6 Ib. 87, in support of the position, that the remaining clause in J. Henderson's will did not devise the land in controversy.

*Marshall* and *Miller*, for defendant in error,

Argued at length in support of the ruling of the court, in admitting the 2d plea of defendant as an error; and in adjudging the tax-deed void, and then proceeded as follows:—

But it is argued by the counsel for plaintiff in error, that it should have been permitted to go in evidence to the jury, even though it were admitted to be void, in order to have enabled defendant below to show his adverse possession at the date of John Henderson's will, and thereby defeat plaintiff's title on the ground of maintenance. It is assumed, that if the land had been conveyed by deed instead of will, the deed would undoubtedly have been void. That, however, is only an assumption of counsel. The law is clearly not as he supposes. Neither a deed nor a will conveying or devising land in suit by a father to his son, would be void for maintenance. See 4 Kent, 489, note, and cases cited; 1 Hawk. P. C. 84.

That the land in controversy passed to Elliott Henderson, under the residuary clause of his father's will, is almost too clear for argument. No testator is presumed to intend to die intestate

as to any part of his estate. Consequently, a residuary clause, unless clearly restrained, is always held to pass whatever is not otherwise disposed of. See 1 Dev. Eq. R. 388: *Vick* v. *McDaniel*, 3 How. 337; *Luckey* v. *Dykes*, 2 S. & M. 69.

But it is manifest from the will itself, that Mr. Henderson did not intend to die intestate as to any part of his estate. What then did he mean by the words, " all else of my property and effects," used in the residuary clause? It is argued, that by the word property, he intended to include only claims, debts, &c. All these would have passed under the word " effects." Property has a much broader meaning. In all ordinary business transactions, and in all legislative enactments, it is construed to comprehend real as well as personal property. It is so defined in our new code, and so, we may say, universally understood. The phrase, " all my property," is quite as extensive and comprehensive as " all my estate," or " all my effects, real and personal," or " all I am worth," and all are held to pass real estate. See *Jackson* v. *Hansel*, 17 John. R. 283 ; *Morrison* v. *Semple*, 6 Binney, 94.

The precise words used by Mr. Henderson, were held by Lord Ellenborough in *Doe ex dem. Andrew et al.* v. *Lainchbury et al.* 11 East. 290, to pass real as personal estate. See also, *Doe ex dem. Morgan* v. *Morgan*, 6 Barn. & Cres. 512, and *Bradford* v. *Belfield*, 2 Sim. 264.

The word property, when used in a will, unless clearly limited or restrained by the context, is always held to pass land as well as personalty. See 1 Jarman on Wills, 668, 670.

But so far from the context restricting or limiting the ordinary meaning of the word property in this will, it shows directly the reverse. In the previous part of the will, the word property is unmistakably intended to include land.

We conclude, therefore, that none of the errors assigned are well taken, and we consequently confidently ask an affirmance of the judgment below.

HANDY, J., delivered the opinion of the court.

This action was brought by John Henderson to recover a tract of land from the possession of the plaintiff in error. Pending the suit, Henderson died, and the cause was revived in the name of the

defendant in error. A verdict and judgment having been rendered for the plaintiff, the defendant moved for a new trial on various grounds; and to the overruling of that motion, he filed his bill of exceptions, and thereupon brings the case here.

Numerous errors are assigned and insisted upon, which we will proceed to consider.

The first, second, and fourth assignments of error proceed upon the ground, that after the death of John Henderson, the suit was revived at November term, 1857, in the name of the defendant in error, *as executor* of John Henderson, and at May term, 1859, that it was revived in his name, in his individual capacity, without any correction of the previous order of revivor, or any abatement of the suit so revived. Hence, it is insisted that the latter order was erroneous, and that, as the record stands, there are two distinct plaintiffs to the action, which renders the judgment void.

These objections appear to be not well founded in point of fact. The record shows that at November term, 1857, the cause was ordered to be revived in the name of St. John Elliott Henderson, as executor of John Henderson, and " that *scire facias* should issue to that effect." It does not appear that that writ was ever issued; and it is plain from the order, as it is entered of record, that the suit was not thereby revived, but that a *scire facias* was ordered to be issued, in order that, after service of it, the suit should be revived as stated. For, if it had been actually revived by the order, there would have been no need for the *scire facias*, which was ordered in order to bring him in to be made a party. It, therefore, appears that, after the order was made, no step was taken to consummate it, and it was abandoned, and afterwards, at the May term, 1859, that the suit was revived as it stands here in the name of the defendant in error.

There is, therefore, no force in these objections.

The third assignment is, that the court allowed a deed from John Black to John Henderson, for a part of the land in controversy, to go in evidence. Several objections are now urged to the admissibility of this deed, but none of these objections appear to have been specified as a ground for excluding it. It appears to be a deed purporting to be acknowledged by the grantor before a competent officer, but does not appear to have been recorded; and the prin-

cipal objection now urged to its competency is, that, the acknowledgment being insufficient, and it not having been recorded, there was no evidence that it was signed by the grantor, or delivered to the grantee.

If it be conceded that the acknowledgment of an unrecorded deed is incompetent and insufficient evidence of its execution and delivery,—a point upon which we express no opinion,—yet the deed was competent evidence, if it was signed by the grantor, and delivered to the grantee. It was valid as to the parties to it, though it might not be so as to creditors and subsequent purchasers of the grantor. As to the delivery, the fact that it was in the possession of the devisee of the grantee, and produced by him on the trial, was sufficient presumptive evidence of delivery. And as to its being signed by the grantor, no objection appears to have been made to it on that ground. It is an objection which was required to be specifically made; because, from its nature, the party offering the paper might be able to obviate it by proof of the signature of the grantor; and he should be apprised of the specific objection, in order that he might have an opportunity to do so. An objection of this nature will not, therefore, be entertained in this court, unless it distinctly appears that the paper was objected to on that particular ground in the court below. *Wesling* v. *Noonan,* 31 Miss. 599. For aught that appears, therefore, in the record, we must presume that the execution of the deed was not objected to, and hence, that it must be regarded as the deed of Black; and if so, it was competent evidence, though it was neither acknowledged nor recorded.

The fifth error assigned is, that the court permitted the plaintiff to read in evidence the second answer, setting up a claim for improvements, by ditching, clearing, &c., made on the premises by the defendant, there being another plea of the general issue filed. The purpose for which this plea was offered, and admitted by the court, appears to be, to prove possession of the premises in the defendant.

There can be no doubt but that the two answers must be regarded as distinct and substantive defences to the action. It is true, that the Statute of 1850, in relation to the forms of pleading in actions at law, requires the defence in such actions to be made by "an answer." But the defendant is not restricted to one answer; and even

if the statute could be so construed, it plainly allows the defendant to "set forth by answer as many defences as he shall have;" so that if the statute could be regarded as allowing but one answer, it expressly authorizes several and distinct defences to be set forth in it, which must have been intended to give him the same rights under his several defences, as he had under the previous practice in pleading several distinct pleas. But the statute provides that these defences "*shall each be separately stated,* and refer to the causes of action which they are intended to answer." This plainly allows the defences to be set up in distinct and separate answers; and, indeed, the language of the statute, as well as the reason and convenience of the thing, would appear to require that they should be set up in that manner, in order to render each defence separate, single, and certain. The same rights and incidents must arise to the defendant from this mode of setting up his separate defences, as arose from the mode of pleading several distinct pleas, by the practice existing before the passage of the statute; and the same general rule which is applicable to distinct pleas must be applicable to separate and distinct answers under the statute.

The rule is well settled, in relation to pleas, that "where there are several distinct pleas, an allegation in one cannot be insisted upon by the adversary as an admission of a fact for a purpose distinct from the proof of the issue upon that plea; for every issue is to be distinctly tried." 1 Stark. Ev. 337 (7th Amer. Edit. 1842); 2 Id. 20–2; Phill. Ev. (Cow. & Hill's notes, part 1), 446, and cases there cited.

It was, therefore, error to allow the plaintiff to read as evidence to the jury, the second answer, in support of the plaintiff's case, which it was incumbent on him to establish upon the plea of the general issue.

The force of this objection will be further considered when we come to notice the exceptions taken to the instructions of the court, in relation to the effect of this second answer as evidence for the plaintiff.

The sixth assignment is, upon the exclusion of the deed of the sheriff to Beall for the land in controversy, and the other deeds from Beall and others, under which the defendant claimed title. The force of this ground of error depends upon the validity of the sheriff's deed.

That deed was executed by the sheriff and tax-collector of Washington county, and purported to convey the land in controversy absolutely to Beall, as the purchaser at a sale for levee taxes, made on the 6th of March, 1854; and it is admitted, that it was executed in virtue of the Act of 30th of November, 1859, which authorized an absolute deed by the sheriff and tax-collector, conveying a perfect title of all lands sold by him for levee taxes. The deed was objected to, and the objection sustained, on the ground, that the Act of 1850, authorizing it, was superseded and repealed by the Act of 1st of March, 1854, which was passed and went into operation before the sale to Beall was made. And the question raised is, whether the Act of 1850 is repealed by that of 1854, so as to render the deed in question invalid.

As before stated, the deed authorized by the former act was a conveyance absolutely of a perfect title to the land sold. The Act of 1854 provides, in substance, that whenever any land should thereafter be sold for levee taxes, the tax-collector selling the same shall give to the purchaser a certificate of such sale, specifying the land sold, &c., and the amount paid by the purchaser at the sale, setting forth the name of the owner, if known, or the name to whom it was assessed; which certificate shall be acknowledged by him and filed in the office of the probate clerk for and during the period allowed for redemption, which is two years; the redemption to be made by paying the redemption-money to the clerk. But after the lapse of two years from such sale, if the land should not be redeemed, that the purchaser should withdraw the certificate and file his bill in chancery against the owner and other parties interested, setting forth his purchase and claim, and the lapse of the two years without redemption, and praying a foreclosure; and if, on the return of process duly served or notice given, the parties should not appear and pay the money due, and subsequently accrued taxes and all costs, &c., the owner should be decreed to be foreclosed of all right or claim, and the title vested absolutely in the purchaser at the tax sale.

This statute does not expressly repeal that of 1850; but we consider its provisions so repugnant to that act as necessarily to operate as a repeal of it. By the Act of 1850, the title acquired by the purchaser was a legal title by conveyance absolute on its face,

but subject, perhaps, to the right of redemption by the owner.  If such right existed under the general statute, for it does not appear to be given by the act, after the lapse of the period allowed for redemption, it ceased, and the title of the purchaser became perfect, according to the terms of the act, by force of the deed authorized by the act.  Instead of a deed of this character, the Act of 1854 requires, that in such sales *thereafter* made, the tax-collector should give the purchaser a certificate of his purchase, having merely the effect of a mortgage, requiring to be foreclosed by suit in chancery as such, and giving to the owner the right, even after the lapse of the period allowed for redemption, and after the commencement of the suit for foreclosure, to come forward and redeem the land. Under the one statute, the purchaser obtained the legal title, defeasible perhaps by redemption ; under the other, he acquired a mere mortgage interest, with the right of redemption to the owner for an indefinite period, which could only be foreclosed by suit in chancery.  It is manifest that the rights of purchasers under the provisions of the two statutes are essentially different ; and it must be taken that the legislature intended to establish the mode of proceeding for securing the interests of purchasers provided by the Act of 1854, as a substitute for that authorized by the Act of 1850.  The Act of 1854 *requires*, that the mode of proceeding with reference to the rights of the purchaser therein prescribed shall be complied with ; and unless this was done, it is clear that the purchaser at a tax sale, made after that act took effect, acquired no title or right under his purchase.  In prescribing a mode of proceeding for protecting the rights of the purchaser, inconsistent with that authorized by the previous statute, the latter statute necessarily abrogated the mode of proceeding, and the rights of purchasers established by the former.  Such, we think, was the legal effect, as it was doubtless the intention, of the Act of 1854 ; and it follows that the deed in question was executed without authority of law, and it was properly excluded as evidence on the trial.

The seventh error assigned is, the first instruction given by the court, in behalf of the plaintiff, as follows : " That the will of John Henderson vests the legal title to the property in controversy in the plaintiff, and is sufficient to enable him to sustain this suit, if they

believe, from the evidence, that John Henderson, at the time of his death, was the legal owner of the land."

The first objection taken to this instruction is, that it appeared, by the declaration and the date of the probate of the will, that the defendant had been in adverse possession of the land for three years before the will was probated; and that the testator, being disseised of the premises at the time of his death, his devise of the same was void. But this position was not correct. It is settled that the rules in relation to champerty and maintenance do not apply to persons standing in the relation of father and son, husband and wife, brothers, &c., and that a conveyance or devise of lands held adversely, or in litigation, made by such parties, is not void. 4 Kent's Comm. 449, note b, 7th edit.

Another objection urged against the instruction is, that by the terms of the will, the land in controversy cannot be held to be devised to the plaintiff.

The will first enumerates his wife and children, who are to be the objects of his bounty. He then proceeds to state that his " property consists principally in landed estate at and near Pass Christian, and in Attala and Leake counties, fifteen slaves, personal property about his household at Pass Christian, and a considerable interest in claims and debts due," which are not specified. He disposes of his personal and real estate at Pass Christian, his lands in Leake and Attala counties, his slaves, his stock in the Grand Junction Canal Company, certain Cuban bonds, and provides, that certain specified debts shall be paid by means of certain claims due him, and of which he would leave a list; and the will concludes in these words :—"*All else of my property and effects, I will and bequeath all to my son Elliott,* for his and his mother's exclusive use."

It is insisted that the words " all else of my property and effects," were intended to apply to all the property and effects which he had previously enumerated, and *which he had not disposed of*, and cannot embrace other property not enumerated. But this construction is manifestly not tenable. It proceeds upon the idea that, in the mention which he made of his property in the commencement of the will, he enumerated all his property which he wished to make disposition of. But this view is clearly not sustained by the contents

of the will ; for he states that his estate consists *principally* of the property and effects which he specifies, thereby clearly showing that he did not undertake to give a full enumeration of his property ; and, for aught that appears, he makes disposition in subsequent parts of the will of all the property and effects which he had enumerated, and even more, for he does not enumerate the canal stock and the large amount of Cuban bonds, his miscellaneous and law libraries, which he subsequently disposes of.

But the language of the residuary clause is very general and comprehensive. It is sufficiently broad to embrace both the real and personal estate of which the testator died seised and possessed, whether enumerated or not in the preceding parts of the will, and which he had not thereby disposed of. *Doe* v. *Langlands,* 14 East. 370 ; *Doe* v. *Morgan,* 6 Barn. & Cres. 512. This plain, legal force of the words must prevail, unless there was something in the will showing an intention to restrict them to some particular part of his property and effects. And we are unable to perceive anything in the will indicating such an intention.

It is further insisted, that no title passed to the plaintiff by the residuary clause, because, although personalty not disposed of, will pass to the residuary legatee, yet that the rule is different in regard to real estate, which, when not disposed of, does not pass under the residuary clause, but goes to the heir at law. This position is attempted to be sustained by reference to a loose and inaccurate quotation in the case of *Vick's executor* v. *McDaniel,* 3 How. 341, " that real estate not disposed of, or ill disposed of, goes to the heir," and does not pass under the residuary clause to the devisee. It is not correct, in the broad terms in which it is stated, that real estate *not disposed of* in a will, will not pass to a residuary devisee. There is, it is true, a difference between personalty and real estate, in the operation of the residuary clause of a will. In a will of personalty, a general residuary bequest carries not only everything not disposed of, but everything that is ill disposed of, and everything that in the event turns out not to be disposed of, whether by reason of a partial revocation of the will, of a lapse, or by a gift being void, or not sufficiently disposed of, or given on a contingency which does not happen. 2 Madd. Ch. 94. In a will of real estate the rule is somewhat different. There, if real estate " *be specifically de-*

*vised*, and the devise does not take effect, either from.the incompetency of the devisee to take, from a partial revocation of the will, a lapse by the death of the devisee in the lifetime of the testator, or from the contingency not happening upon which, as a condition precedent the devise was made, or was to take effect, it descends to the heir, as property undisposed of by the will," and does not go to the residuary devisee under the general residuary clause. *James* v. *James*, 4 Paige, 117. But if the real estate *be not attempted* to be disposed of specifically by the will, it will pass to the general residuary devisee, unless restricted by other clauses of the will; for, not being disposed of, nor *attempted to be disposed of*, it must be taken to have been intended to be embraced in the positive disposition of ·the residuary clause. 1 Jarman on Wills, 588–590 (1st Amer. edit.). In such a case, it would be doing violence to the express disposition of the will to say, that, as to such real estate, the testator intended to die intestate.

The next error insisted upon, is the third and fourth instructions given at the instance of the plaintiff, as follows :—

3. That going on the land in controversy by the defendant, either by himself, or his agents, or servants, and erecting substantial improvements thereon, worth $1500, and having such possession anterior to the commencement of this suit, are such facts indicating the defendant's possession at the time the suit was commenced, as the jury may act upon in making up their verdict, and will warrant the jury in so finding the fact to be, unless the defendant has shown by the proof in the case that the possession previously held by him was abandoned.

4. That the plea of defendant is an admission of fact on the record, which he is estopped from denying; but while it is to be taken as absolutely true as to him, it is not as to the adverse party, unless sustained by proof.

It appears that the only matter in controversy on the trial, was the plaintiff's right to recover the land, as presented by the plea of the general issue ; there being no evidence offered by either party in relation to the claim for rents and profits set up in the declaration, and the set-off for improvements set up in the second plea or answer. If any evidence had been offered by either party upon that point, it might have been proper for the jury to consider the posi-

tion in which the defendant placed himself by his second plea, in determining the question of possession of the premises involved in the first plea; for it would then have been a part of the evidence in the cause, to which the jury could not shut their eyes in the trial of both issues. But the case appears to have turned entirely on the first plea, under which it was incumbent on the plaintiff to show, by sufficient legal evidence, satisfactory to the minds of the jury, that the defendant was in possession of the premises at the time of the institution of the suit. Such being the real issue on trial, we have above seen, that it was not competent to read the second plea of the defendant as evidence of his possession, much less could it be considered as an admission of the fact, which estopped him from denying it. For the subject-matter of each plea is a distinct and separate ground of defence, which cannot be used in evidence when the case turns upon an issue presented by another plea. Yet it is true, that whatever is sufficiently admitted in one plea, is to be taken as true upon the trial of the issue under that plea. The fourth instruction is, therefore, erroneous. The third instruction appears to be given with reference to the rule of evidence stated in the third. It assumes the facts of the defendant going on the land by his agents or servants, and erecting substantial improvements thereon, previous to the commencement of the suit; treating these facts as proved or admitted, when there was no evidence clearly establishing them, except the statements of the second plea. If the facts had been proved by competent evidence to the satisfaction of the jury, the conclusion of the instruction would have been correct; that is to say, the facts of possession and making improvements, prior to the institution of the suit, would have warranted the jury in inferring, that the possession was continued up to the time the suit was brought, unless the defendant showed that he had then abandoned the possession. But these facts should have been submitted to the judgment of the jury, and not treated by the instruction as proved; nor should they have been instructed that they were admitted by the defendant's plea.

The court, therefore, erred in giving these instructions, and also in refusing the second instruction of the defendant, which was the reverse of the rule stated in the plaintiff's fourth instruction.

The only other error complained of, which we consider it neces-

sary to notice, is the general rule stated by the court in modifying the defendant's first instruction, in relation to proof of the defendant's possession. That modification referred to the rules stated by the court in its second, third, and fifth instructions in behalf of the plaintiff.

We consider the instruction, as modified, correct, except so far as, by reference to the instructions given for the plaintiff, it treated the second plea as evidence of possession, and assumed the facts, that the defendant had gone into possession prior to the commencement of the suit, and made improvements on the land, as proved.

For the error above stated, the judgment is reversed, and the case remanded for a new trial.