## WHITE v. KELLER.

(Circuit Court of Appeals, Fifth Circuit. April 23, 1895.)

### No. 262.

1. EVIDENCE—JUDGMENT.

   An action of ejectment, to recover certain land in Mississippi, was brought by W., claiming under deeds from the heirs at law of A., a former owner, against K., claiming under deeds from devisees to charitable uses under the will of A., who resided and died in Louisiana. Upon the trial, the defendant offered in evidence the record of a suit in Louisiana, to which both the heirs and devisees of A. were parties, and of the judgment therein. *Held*, that such record was admissible to prove that the will of A. was valid in Louisiana, that it devised all his real estate, that the devises to charitable uses were valid and the donees capable of taking the same, all of which points were decided by the judgment, which was binding on both parties to the action of ejectment as privies to the parties to the Louisiana suit.

2. WILLS—INTERPRETATION—PROPERTY.

   The term "property" embraces both real and personal estate, and a gift of the residue of "property and effects," in the general residuary clause of the will of a resident of Louisiana, is sufficient to pass real estate in Mississippi not specifically devised.

3. SAME—TIME OF TAKING EFFECT.
    A devise of real estate takes effect upon the death of the testator, and its operation is not postponed to the time of proving the will in the state where the land lies.

4. CHARITABLE USES—PERPETUITIES.
    The rule against perpetuities cannot be invoked to defeat a devise to charitable uses.

5. SAME—LAWS AND PUBLIC POLICY OF MISSISSIPPI.
    There was no law or public policy in force in Mississippi in 1886 which prohibited a foreign ecclesiastical corporation, authorized by its charter and the laws of its domicile to take and hold lands for charitable uses, from taking and holding land in Mississippi in trust for such purposes, nor did the constitution of 1890 take away any rights vested in such corporations prior to its adoption.

6. TRUSTS—CAPACITY OF TRUSTEE.
    Where a devise of land has been made upon a valid trust, the heirs at law of the testator have no right to inquire into or contest the right of the trustees to take or execute the trust.

In Error to the Circuit Court of the United States for the Southern District of Mississippi.

This was an action of ejectment by Walter A. White against J. H. Keller. Judgment was rendered in the circuit court for the defendant. Plaintiff brings error. Affirmed.

In 1892, Walter A. White, the plaintiff in error, brought ejectment in the circuit court of Harrison county, state of Mississippi, against the tenant of J. H. Keller, defendant in error, who under the statute was admitted to defend, to recover a tract of land in that county. The same year the cause was removed to the United States circuit court by Keller on the ground of diverse citizenship. Keller alleging himself to be a citizen of Louisiana. In 1894 a trial was had, resulting in a verdict for the defendant in error under a peremptory charge by the court, and from the judgment on this verdict plaintiff sued out this writ of error. The admitted common source of title was Kaspar Auch. The plaintiff proved that David Zable and Rosina Muller, half brother and sister, were the sole heirs at law of said Auch; that Auch died seised of the property in 1886; and read in evidence the deeds of said Zable and Muller to him for the land, executed in 1891, which were quitclaim deeds, for an alleged consideration of $50 each; and rested. There were no objections to plaintiff's evidence. The defendant claimed title under the residuary clause of the will of Kaspar Auch, executed in New Orleans in 1886; and read in evidence, over the plaintiff's objection, a transcript of the record of the chancery court of Harrison county, state of Mississippi, in the matter of the probate of the will of said Auch, whereby Keller, in 1893, in his own interest, propounded for probate and probated the original will of Auch, upon a petition which recites that Auch was a citizen and resident of Louisiana, and died at his domicile at New Orleans in 1886, seised of real and personal estate in Louisiana, and of realty in Mississippi; that in 1886 said Auch made a will in New Orleans, in nuncupative form, before a notary, in the presence of three witnesses, which was probated in the civil district court of Orleans parish in 1886, upon the petition of the executors named. A copy of the will as probated in Louisiana is filed with the petition. The petition contains proper averments for the probate of an original will, and the original will is produced for probate, and the prayer is that the original will be admitted to probate. Due proof of the execution of the will was made by Hero, a witness, and upon this petition and proof the original will was admitted to probate. The will, after making numerous monetary bequests, among others to David Zable and Rosina Muller, contains this residuary clause: "I give and bequeath to the several incorporated religious associations of the city of New Orleans, propagating the teachings of religion according to the form of government and Book of Discipline of the Presbyterian Church, all the rest and residue of the property and effects that I may die possessed of, of whatever nature and kind, to the end that the poor of said respective churches in

this city may be cared for." Theisman and Wicke were appointed executors, and qualified as such in Louisiana. Plaintiff conceded that these probate proceedings were regular on their face, but objected to the reading of this record in evidence for the reason: "(1) The said will does not, on its face, purport to devise real estate in Mississippi, and must be limited in its operative effect to the state of Louisiana. (2) The said will, even if otherwise unobjectionable, could not pass to foreign religious societies the real estate of the testator in controversy, because said societies, at the death of the testator, had no capacity to take real estate in Mississippi for any purpose, and especially for the purpose stated in the instrument itself. (3) The religious societies named in the will could, by comity, acquire and hold in Mississippi no greater rights than domestic religious establishments, and these latter could not, when the will was executed, or at the death of the testator, take such devise as is therein made, or acquire or hold the lands in controversy for the purpose stated in said will. (4) The said will, if allowed in evidence and given the construction contended for by counsel, would allow to foreign societies what is denied to domestic religious establishments, and invest such foreign religious societies with the legal title to real estate in Mississippi, contrary to her constitution and laws, and against her determined policy. (5) The said will, in its residuary clause, is void for uncertainty as to the trustees and beneficiaries. It provides no plan or scheme by which to ascertain the poor of the churches or apportion the fund, and the trust could not be enforced in the courts of this state by the trustees or beneficiaries. (6) The words 'property and effects,' as used in the residuary clause, are shown by the context to apply only to personalty, or, at best, to the 'property and effects' of the testator in Louisiana. (7) If said clause be construed as vesting title in the churches, they are given no power of disposition over the lands in this state, and the will would create a perpetuity. (8) The will was not probated until after the adoption of the constitution of Mississippi in 1890; and as, under that constitution, the devise is void, and no title in Mississippi could pass under the will until probated, the prohibition of the constitution extends to it, though made in 1886. There is no comity, law, or decision that could, in the doctrine of relation, defeat the constitution and policy of the state, the churches not being purchasers. But the court overruled the said objections and allowed the said will to be read in evidence, to which ruling and judgment of the court in overruling said objections, the plaintiff then and there instantly excepted, and his exception was allowed. The said petition, will, and probate order and certificates, were read to the jury, the exhibits to the petition and caption being omitted, by consent of counsel and court, to save expense." These objections were overruled, and plaintiff excepted, and this action of the court constitutes the ground for the first assignment of error.

The defendant then read in evidence a transcript of the record of the supreme court of Louisiana in the matter of the succession of Kaspar Auch, whereby it appeared that in 1886, on the petition of the executors and on proof of death, the will was probated in the civil district court, in nuncupative form, by notarial act, and without proof by witnesses, as the notarial act imported full proof. It contained also the petition of intervention of certain churches, to which petition the executors only were defendants, setting up the residuary clause of the will, and averring that the petitioners were the corporations thereby described, and praying to be declared residuary legatees, and that the executors sell the lands of the estate specified in exhibits. Upon proof made, the civil district court, in June, 1886, decreed the churches to be residuary legatees and instituted heirs, and that the executors sell the real estate mentioned in the inventory, and account for personalty and the proceeds of sale of lands to the churches. Said transcript also set forth a petition, filed in October, 1886, by Rosina Muller, naming the executors, said churches, and David Zable as defendants, setting forth the judgment in favor of the churches on their petition, and averring that the residuary clauses of the will were void, for the special reasons: "(1) Because it is therein attempted to create a trust, and to hold and perpetuate a fund for purposes not recognized by law. (2) Because the said clause is in effect a fidei commissum and substitution, and in violation of law. (3) Because the said claimants and the said legatees are incompetent to receive the said legacy, the object and purposes of

the same being beyond the scope of the powers granted by the various charters of the said churches and societies, and by the laws of this state for the creation and government of the same. (4) Because the said attempted disposition is too vague and indefinite, and can never be carried into effect, by reason of said vagueness and indefiniteness,"—and praying that she be recognized as heir, notwithstanding said decree in favor of the churches. The executors and the churches answered. Zable did not appear, nor is it shown that he was served with process. This petition upon proof taken was dismissed. Petitioner Muller appealed to the supreme court of Louisiana, and the judgment was affirmed. Succession of Auch (La.) 3 South. 227. Plaintiff objected to the reading of this record of the Louisiana court in evidence, for the reasons: "Because the said transcript was not competent evidence in this controversy as to the issue to be tried by the jury, and, if intended as an estoppel on the plaintiff through one of his grantors, Rosina Muller, was inoperative here, and because the precise question therein litigated not being now here in issue; and for the further reason that the opinion and judgment of the said supreme court is neither pursuasive nor controlling as to the validity of the residuary clause of Kaspar Auch's will here, in respect of land in Mississippi; and because the opinion of the court could be proven by the report thereof to be found in the printed volume of Reports of Louisiana, or by a certified copy of the opinion itself." These objections were overruled, and plaintiff excepted. Therefrom arises the second assignment of error.

The plaintiff admitted that the defendant derived title through mesne conveyance from the said churches. Thereupon, at the instance of the defendant, the court granted a peremptory instruction to find for defendant; to which action plaintiff excepted, and from this ruling arises the third assignment of error. Upon this writ of error, it is admitted that the several churches through whom defendant claims title were duly incorporated under the laws of Louisiana, by charters of the same tenor and effect as that of the First Presbyterian Church, found in the record; and that the same were duly certified, in the same form as set forth in the record, by the recorder of mortgages of the parish of Orleans; and that said several churches are named in the record. It is further admitted that said churches, petitioners in the intervention proceeding, passed in 1886, and had enrolled on their several minutes, resolutions of the same tenor and effect as those of the First Presbyterian Church, set forth in the record, accepting said residuary clause of the said will; and that said minutes of said several churches, duly certified, and said several charters duly certified, were set forth and constituted part of said record of the supreme court of Louisiana read in evidence. It is further admitted that there was contained in said record of the Louisiana court, read in evidence, proof of the identity of said intervening churches, with the description contained in said residuary clause of said will; and that that proof showed that said churches, named as grantors in the deed to Keller's grantor, were the "incorporated religious associations of the city of New Orleans" intended to be described in said residuary clause of the will of Auch.

S. S. Calhoun, M. Green, W. L. Nugent, and T. A. McWillie, for plaintiff in error.

R. H. Browne, E. J. Bowers, Thomas L. Ford, and Ira L. Ford, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

PARDEE, Circuit Judge (after stating the facts). That the will of Kaspar Auch was a valid will in Louisiana; that it devises all the real estate of which Kaspar Auch died seised; that the legacy to the incorporated churches of the Presbyterian denomination in the city of New Orleans, "to the end that the poor of said respective churches might be cared for," is a donation to pious uses; that there is no uncertainty as to the legatees described in

the will; and that the several incorporated churches named in the record have power, under their charters, to take as trustees under the said will, and have full power to administer the trust,— is all adjudicated by the decision of the supreme court of the state of Louisiana, found in the record, and reported in 39 La. Ann. 1043, 3 South. 227.

On the trial in the court below, the plaintiff objected to the admission in evidence of the record from Louisiana, and such admission is assigned in this court as error. Many objections are elaborated, but they are mainly as to the effect to be given to the record. In our view, the record was admissible to show that, as between plaintiff's grantors and the defendant's grantors, practically the matters above recited were duly litigated and decided, binding both plaintiff and defendant privies thereto as to all matters in connection with the will of Kaspar Auch within the jurisdiction of the Louisiana court.

"The nature, meaning, and interpretation of a will of immovable property, and the rights and powers arising under it, are to be determined by the law of the domicile of the testator, and not by the law rei situs." Crusoe v. Butler, 36 Miss. 150; citing Story, Confl. Laws, 262, 479a, 479h, 479m, 490.

As Kaspar Auch's domicile was in the state of Louisiana, and as the question in this case involves immovable property in the state of Mississippi, it seems clear that the nature and meaning and interpretation of Kaspar Auch's will, and the rights and powers arising under it, are fully settled for this case by the decision of the supreme court of Louisiana, supra.

"The term 'property' embraces both real and personal estate; and under it, when used in the general residuary clause in a will, the real estate of the testator, not attempted to be specifically disposed of, will pass." Morris v. Henderson, 37 Miss. 492; citing Doe v. Langlands, 14 East, 370; Doe v. Morgan, 6 Barn. & C. 512, 13 E. C. L. 235.

"If the real estate be not attempted to be disposed of specifically by the will, it will pass to the general residuary devisee, unless restricted by other clauses of the will; for, not being disposed of, nor attempted to be disposed of, it must be taken to have been intended to be embraced in the positive disposition of the residuary clause. 1 Jarm. Wills, 588–590. In such a case it would be doing violence to the express disposition of the will to say that, as to such real estate, the testator intended to die intestate." Morris v. Henderson, supra.

These authorities dispose of the objections that the will of Kaspar Auch does not, on its face, purport to devise real estate in Mississippi, and must be limited in its operative effect to the state of Louisiana, and that the words "property and effects," as used in the residuary clause of Kaspar Auch's will, are shown by the context to apply only to personalty, or, at best, to the property and effects of the testator in Louisiana.

If the devise of all the testator's real estate to the Presbyterian churches of New Orleans, "to the end that the poor of said respective churches may be cared for," is a valid devise, and operated to convey real estate in the state of Mississippi,—as to which more will be said hereafter,—then the question is presented as to when the said devise took effect. It is seriously contended, and the contention is supported by very plausible argument, that the said de-

vise took effect only when the will of Kaspar Auch was probated in Mississippi, and Rankin v. Scott, 12 Wheat. 177, and M'Cormick v. Sullivant, 10 Wheat. 202, are cited as authority for the position. An examination of those cases will show that they do not support the contention, but rather establish, what we think would hardly be denied, that the subsequent probate of an unregistered will will not be effective as against an innocent purchaser for value from the heir at law. In Williams on Executors (Am. Notes, p. 255) it is said:

"The probate is, however, merely operative as to authenticated evidence, and not at all as the foundation of the executor's title, for he derives all his interest from the will itself, and the property of the deceased vests in him the moment of the testator's death. Hence the probate, when produced, is said to have relation to the time of the testator's death."

In the case of Crusoe v. Butler, supra, the above proposition from Williams on Executors is quoted with approval, and the court, speaking of an Alabama will probated in Mississippi, under which the executors had made a sale of lands in Mississippi prior to probate in that state, said:

"When the will was probated in Alabama, the power granted had relation back to the death of the testator. The grant of letters was merely the establishment of the character of the executors, and operated as a sanction to their exercise of the said power, granted to them in their character as executors by the will. The power in them was thus complete upon the probate of the will and their undertaking the trust in Alabama; and when the will was admitted to record in this state, it was merely for the purpose of authenticating the evidence by which the special power was established, and of rendering the prior right available here; but it was clearly neither the source nor the foundation of the power."

If it were necessary, the proposition quoted from Williams on Executors, supra, could be supported on principle, and by the authority of many adjudged cases. But we do not understand that the case of Crusoe v. Butler is seriously denied as correctly declaring the law in Mississippi, and we therefore conclude that the rights of the legatees under the will of Kaspar Auch, if said will was otherwise valid, vested when Kaspar Auch died, in 1886, and that the rights of the defendant in error, claiming under said legatees, are unaffected by the failure to probate the will of Kaspar Auch in the state of Mississippi until the year 1893; and also that in determining whether the will of Kaspar Auch was valid, and passed the real estate belonging to the testator in the state of Mississippi, the constitution of the state of Mississippi declared and put in force in 1890 need not be considered, except so far as the provisions of the said constitution may aid the court in determining what was the policy of the state of Mississippi in the year 1886 in regard to devises to religious corporations in trust for charitable uses. So far as the will under consideration makes a devise for charitable uses, we understand that the rule against perpetuities cannot be invoked against it. Jones v. Habersham, 107 U. S. 174–185, 2 Sup. Ct. 336; Russell v. Allen, 107 U. S. 163, 2 Sup. Ct 327; Ould v. Hospital, 95 U. S. 303; 1 Perry, Trusts, 384.

Having eliminated all the objections made to the introduction of Kaspar Auch's will as probated in 1893, in evidence on the trial of the case in the court below, except the objections, stated in various forms, that the will is invalid and did not pass title to real estate in Mississippi because the devise of real estate to religious corporations in trust for charitable uses was contrary to the law and public policy of that state, we now proceed to consider that question, the main one in the case.

"For, besides the admitted incapacity of a corporation of one state to exercise its powers in another state, except with the assent and permission, expressed or implied, of the latter, it is a principle 'as inviolable as it is fundamental and conservative that the right to hold land, and the mode of acquiring title to land, must depend altogether on the local law of the territorial sovereign.' Runyan v. Lessee of Coster, 14 Pet. 122; Lathrop v. Bank, 8 Dana, 114." Christian Union v. Yount, 101 U. S. 352–354.

The following propositions are declared in the headnotes of the case:

"In harmony with the general law of comity among the states composing the Union, the presumption is to be indulged that a corporation, if not forbidden by its charter, may exercise the powers thereby granted within other states, including the power of acquiring lands, unless prohibited therefrom, either in their direct enactments or by their public policy, to be deduced from the general course of legislation or the settled adjudications of their highest courts. This court cannot presume that it is now, or was in 1870, against the public policy of Illinois that one of her citizens owning real estate there situate should convey it to a benevolent or missionary corporation of another state of the Union, for the purpose of enabling it to carry out the objects of its creation, since she permitted her own corporations, organized for like purposes, to take such real estate by purchase, gift, devise, or in any other manner."

There are no settled adjudications of the supreme court of the state of Mississippi declaring the public policy of the state to be for or against the power of religious corporations of the state to take, or take and hold, as trustees for charitable uses, any devises of property real or personal made by her own citizens or by foreigners. The only case we find, or to which we have been cited, in which the supreme court has at all considered the question, is Wade v. Society, 7 Smedes & M. 663. It was held in that case that the trusts created by the will of Isaac Ross in favor of the American Colonization Society, looking to the emancipation of slaves, were legal and valid, being sufficiently definite and certain for a court of equity to enforce them by virtue of its ordinary jurisdiction. In relation to charitable trusts, and whether the statute of 43 Eliz. was in force in the state of Mississippi, the court said:

"It is next contended that if these devises are invalid, either for want of capacity to take on the part of the donees, or of the trustees, then equity cannot enforce them as charities. To this we reply that if the trusts created by this will be valid, then there is no room and no necessity for the application of the doctrine of charities. It is only where the bequest or devise is too vague or indefinite for those intended to be benefited to claim any interest under them that the doctrine as to charities arises. It is clearly settled that 'definite charities are trusts, which equity will execute by virtue of its ordinary jurisdiction.' Gallego's Ex'rs v. Lambert, 3 Leigh, 450; Inglis v. Trustees, 3 Pet. 100. Charities begin where definite trusts end. It is there-

fore wholly unnecessary for us to inquire whether St. 43 Eliz. is in force in this state, and whether the court of chancery has any jurisdiction over charities to compel their performance, apart from and independent of that statute. It may not be out of place, however, to remark, as this point was urged in argument with great zeal, that in the late case of Vidal v. Girard's Ex'rs, 2 How. 127, that court modified very much, if it did not over rule, the case of Trustees v. Hart's Ex'rs, 4 Wheat. 1. The court there said that 'new sources of information, recently developed, established conclusively that, long before that statute, courts of chancery exercised jurisdiction over charities, not only where they were indefinite in their nature, but where either no trustees were appointed or where they were not competent to take.' The opinion was delivered by Judge Story, and must be regarded also as an abandonment of the opinion upon this subject expressed in his Commentaries upon Equity. But in this case it is matter of speculation rather than of practical use, because we see no reason to change the former opinion, that these trusts, so far as it is necessary now to determine them, are valid."

There is some discussion in the briefs of counsel as to whether the court in that case approved of Gallego's Ex'rs v. Lambert, 3 Leigh, 450, or of Vidal v. Girard's Ex'rs, 2 How. 127, as to the effect of the repeal of 43 Eliz., and in regard to the power of courts of equity to enforce charitable trusts. As we read the case, we incline to the opinion that the court cited Gallego's Ex'rs v. Lambert only for the proposition that "definite charities are trusts, which equity will execute by virtue of its ordinary jurisdiction," and that, as to whether courts of chancery have any jurisdiction over charities to compel their performance apart from and independent of 43 Eliz., the court leaned to the doctrine declared in Vidal v. Girard's Ex'rs. But it is not important to be accurate in regard to this matter, because it is certain that Wade v. Society cannot be held as declaring any public policy of the state in relation to charitable trusts. So far as the laws of the state of Mississippi are concerned, our examination leads us to the conclusion that in relation to devises in favor of religious corporations in their own right, or to such corporations as trustees for charitable uses, the public policy of the state of Mississippi has not been uniform. In the early days, and up to 1838, the legislature incorporated some 46 different churches. Hutch. Code Miss. 335, 336. So far as we have been able to examine these charters to ascertain the power generally given the respective churches to take and hold real estate, we find generally that the power is ample, and that the churches were highly favored. Rev. Code Miss. 1824, pp. 596–603. In 1838 an act was passed granting certain powers and privileges to the officers of organized religous societies, in which it was enacted that:

"Hereafter when any body of people shall organize themselves as a religious sect, and shall establish a place of worship, it shall be lawful for the officers of such body, so organized, or such trustees as shall be duly elected, or appointed by said body, to receive by gift, grant, or purchase, any lands, tenements, or other property, for the use and benefit of said body, or their successors, to be used and enjoyed by them, so long as they or their successors shall continue to worship at such place so established." See Hutch. Code Miss. p. 324.

So far as we are advised, this remained the law until the Code of 1857, which provided a general law for the chartering of corporations by the governor, with the approval of the attorney general,

and declared that thereunder charters may be granted for the following purposes only, to wit:

"For the incorporation of cities, towns, Masonic and Odd Fellows' lodges, temperance societies and associations, charitable associations, literary institutions or associations, religious societies, fire companies, mechanics' societies, manufacturing companies, agricultural societies, associations formed for the building of theatres and hotels, and telegraph companies." Code 1857, c. 35, § 1.

Section 10 of said chapter contains the following provisions as to religious societies or congregations:

"Art. 53. Any religious society or congregation, or ecclesiastical body, may hold at any one place, a house or tenement for a place of worship, with proper and reasonable ground thereto attached; a house or tenement as a place of residence for their pastor or minister, with proper and reasonable ground thereto attached; a house or tenement to be appropriated and used as a male school or seminary of learning, with proper and sufficient ground thereto attached; and another house or tenement to be appropriated as a female school, or seminary of learning; and a cemetery of sufficient dimensions, and no more. Provided, that any religious society or denomination may own such colleges, or seminaries of learning, as it may think proper, if used for such purposes.

"Art. 54. All lands, tenements, or hereditaments, or any interest or benefit therein, or therefrom, except for the purposes provided in the foregoing article, which may be given, granted, conveyed, leased, or released, to any religious society, denomination or congregation, either directly or indirectly, or in trust or confidence for the use or benefit of such society, either express or implied, or secret, or by the judgment of any court, or by way of lien, mortgage or pledge, shall be ipso facto, by such alienation, forfeited to the state; nor shall such society, denomination, or ecclesiastical body, by any act or ingenuity, appropriate, or have appropriated, to its use, or for its benefit, or to its disposition, any present or future interest in lands, tenements, or hereditaments, other than to the extent above mentioned; nor shall any such society evade this provision, by any device or subterfuge, in taking or holding more land for any of the purposes above mentioned, than is necessary.

"Art. 55. Every devise or bequest of lands, tenements, or hereditaments, or any interest therein, of freehold, or less than freehold, either present or future, vested or contingent, or of any money directed to be raised by the sale thereof, contained in any last will and testament, or codicil, or other testamentary writing, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination, or association of persons, or to any person or body politic, in trust, either express or implied, secret or resulting, either for the use and benefit of such religious corporation, society, denomination, or association, or for the purpose of being given or appropriated to charitable uses or purposes, shall be null and void, and the heir at law shall take the same property so devised or bequeathed, as though no testamentary disposition had been made.

"Art. 56. Every legacy, gift, or bequest, of money or personal property, or of any interest, benefit or use therein, either direct, implied, or otherwise, contained in any last will and testament, or codicil, in favor of any religious or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society, or to any religious denomination or association, either for its own use or benefit, or for the purpose of being given or appropriated to charitable uses, shall be null and void, and the distributees shall take the same as though no such testamentary disposition had been made." See Hutch. Code Miss. pp. 302, 303.

The foregoing provisions are reproduced in sections 2438–2441, c. 55, art. 7, Code 1871. Under the provisions of these two Codes, there can be little doubt that the power of religious corporations in the state of Mississippi, so far as they could be controlled by statute, were restricted so that no religious corporation could take a devise

of property either in its own right or as trustee for charitable uses. In 1872, however, the legislature dealt with the subject again, and without expressly repealing sections 2439–2441 of the Code of 1871, above quoted, enacted:

"That sections 2439, 2440 and 2441, article 7, chapter 35, of the Revised Code of 1871, be so amended and construed as in no manner whatsoever to prohibit or prevent any religious society or ecclesiastical corporation, sole or aggregate, or any religious or ecclesiastical society of this state, or of any of the United States, incorporated by the laws of any of the other states of the Union, prior to the adoption of the Code of this state of 1871, the acts of incorporation of which grant the franchise of taking, receiving, acquiring and holding real and personal estate, as provided for in the act of incorporation of said religious societies, corporations or denominations; and that said sections aforesaid shall, in no manner whatever, interfere with, be construed so as to limit or otherwise impair the franchise granted by the laws of this state, or by the laws of any of the states of the Union, to any religious society or corporation aforesaid, to receive, take, acquire, and hold real and personal estate, as provided in said acts of incorporation." See Laws Miss. 1872, p. 32, c. 26.

And to the end that the construction given by this act should be coextensive with the articles of the Code thus legislatively construed, it was enacted that the act itself, approved March 20, 1872, should take effect and be in force from and after the 1st day of October, 1871, the day on which the Revised Code of 1871 went into effect. In preparing the Code of 1880, the above-quoted act of 1872 was doubtless regarded as practically repealing sections 2439, 2440, and 2441 of the Code of 1871, for those sections were all omitted.

We have been favored on both sides with an interesting discussion as to the scope and effect of sections 2437 and 2438 of the Code of 1871, reproduced as sections 1071 and 1072 of the Code of 1880, in determining the public policy of the state as to the powers of religious corporations to take and hold real estate. As showing a legislative tendency to closely limit the powers of the religious societies created by section 1071, Code 1880 (section 2437, Code 1871), into quasi corporations, to hold, if not to take, real estate, the sections 1072 of the Code of 1880 and 2437 of the Code of 1871 are very impressive; but we cannot construe these sections as at all affecting the powers theretofore granted to full-fledged ecclesiastical corporations chartered by special laws, nor even affecting the powers of such religious corporations as should be thereafter fully chartered by the governor and attorney general under the provisions of sections 1027 to 1032 of the Code of 1880, which corporations were authorized to take and hold real and personal estate, not exceeding $50,000. See, also, Acts 1882, p. 50, c. 26. That the sections in question were not intended to apply to ecclesiastical corporations is shown by the fact that they were originally followed by the sections 2439, 2440, and 2441, Code 1871, which unquestionably apply. When Kaspar Auch's will took effect in 1886, and when the Presbyterian churches of New Orleans, devisees under the will of Kaspar Auch, conveyed to the grantors of the defendant in error, in 1888, this was the state of the law in regard to the power of religious corporations of Mississippi, or of other states of the Union, to acquire real estate or other property in Mississippi in trust for charitable uses. It may be here noted that the religious corporations of Louisiana, the trustees for char-

itable uses under Kaspar Auch's will, were fully empowered in that behalf prior to the adoption of the Mississippi Code of 1871, so that, for the purposes of this case, it is immaterial whether the restrictive sections 2439, 2440, and 2441 of the Code of 1871 were wholly repealed by the Code of 1880 or remained in force with the legislative construction of 1872. After the rights of the defendant in error were acquired and vested, and before the plaintiff in error acquired his title, the constitution of 1890 was enacted and declared in force. In this constitution the sections 2439, 2440, and 2441, as they appear in the Code of 1871, are practically reproduced and made a part of the fundamental law of the state. We do not understand that the constitution of 1890 was intended to give to the grantors of the plaintiff in error any rights to property in Mississippi not theretofore existing, or that it was intended to, even if it could, take away any of the vested rights of the defendant in error; and therefore we are of opinion that the question whether the laws and public policy of the state of Mississippi prohibited and avoided the grant of property in Mississippi to the devisees under the will of Kaspar Auch in trust for charitable uses must be determined by the laws and public policy in force at the time the devise took effect; and at that time, from the review we have given, it cannot be said that such devise was void because prohibited by law, or that there was such a well-defined public policy adverse to the power of ecclesiastical corporations to take and hold real estate for religious or charitable uses as would authorize this court to declare the devise void.

If possibly we are wrong as to this view of the public policy of the state of Mississippi, and the declaration in the constitution of 1890 can have retroactive effect against foreign religious corporations in regard to power to take, hold, and administer trusts for charitable uses, it is still clear that under the circumstances of this case the plaintiff in error, as holding from the heirs at law of Kaspar Auch, is without right or interest to raise the question. The trust was valid in 1886, whatever the powers of the trustees may have been, or whatever may be the since-declared public policy of the state of Mississippi, and therefore the heirs at law of Kaspar Auch were divested by his will of all interest in the property devised, and left without right to attack the same. Christian Union v. Yount, supra; Jones v. Habersham, supra.

"And if the trusts were in themselves valid in point of law, it is plain that neither the heirs of the testator nor any other private person could have any right to inquire into or contest the right of the corporation to take the property or execute the trust." Vidal v. Girard's Ex'rs, 2 How. 191.

The views herein expressed practically dispose of all the questions raised by the assignment of errors, and adversely to the plaintiff in error, and the judgment of the circuit court is therefore affirmed.