E. J. WILSON, FRED H. MUNSON, ALICE MORSE and HENRY J. MUNSON, Appellants, v. FIRST NATIONAL BANK OF INDEPENDENCE, IOWA, and THE MUNSON INDUSTRIAL TRAINING SCHOOL, Intervenor, Appellee.

Charitable gifts: VALIDITY. Gifts to charitable purposes will be upheld when consistent with law; and to this end the rules of law will be liberally applied, thus often sustaining a charitable bequest where a private trust would fail.

Same: INDEFINITENESS. A charitable gift is not void for indefiniteness, where those benefited are designated in a general way, but leaving the application of the gift to be made by the trustee.

Same: ESTABLISHMENT OF SCHOOLS. Gifts for the establishment of schools for the mental or moral improvement of the people, especially for the poor, are lawful public charities.

Same: DEFINITENESS. A gift for the establishment of an industrial training school for children and a library building to be used by the people of a certain town, naming trustees to administer the gift until a corporation was organized for that purpose, and providing for the construction of a school building and that the school should be open to all persons fitted for the training offered, regardless of sex, race or color, was not invalid on the ground of indefiniteness; as it is sufficient if the general nature and purpose of the gift is expressed, or reasonably ascertainable from the instrument, leaving the practical working out of the object sought to the trustees.

Same: PERPETUITIES: APPLICATION OF STATUTE: CHARITIES. Gifts to charitable uses are not prohibited by the statute against perpetuities; and a gift for the establishment of a training school for children and for a public library is for a charitable purpose and is not in violation of the statute, although not limited to the use of the poor and needy; as the term charity includes any scheme for the betterment of society, and includes any gift consistent with law tending to promote science, education or enlightenment or the public convenience.

Same: PERPETUITIES: STATUTE. A bequest of bank stock for a charitable purpose, subject to the payment of dividends thereon to relatives of the testator during their natural lives, and upon their death the stock to be turned over to the charity, was not invalid as against the statute of perpetuities on the ground that it was a gift over after the lapse of another gift.

**Same:** PERPETUITIES: STATUTE. Where a testator bound the trustees of a charitable bequest by contract to organize a corporation within a year after his death to take over the bequest, and he reaffirmed the same in his will, the gift was not in violation of the statute against perpetuities in that it failed to limit the time for organization of the corporation.

**Same.** Where the testator secured the erection of a building for school purposes during his lifetime, and by his will created a fund for its support, which was not available until after the death of relatives to whom he gave the income for life, those appointed to manage the trust were not chargeable with negligence or laches, because failing to anticipate the receipt of the fund and to attempt to conduct the school without means.

**Charitable trusts.** Where the charitable character of a trust has been made apparent all doubts will be resolved in its favor.

**Same:** VALIDITY. A charitable trust will not be held invalid simply because it cannot take effect as fully as the donor intended; but it will be given effect by the court as far as possible. Nor will it be held void because contemplating gifts from others which may never be made; and in the absence of any evidence as to the necessities of the case a gift of $30,000 for the purpose of founding a training school and public library will not be held so inadequate as to invalidate the bequest for that purpose.

**Same:** NECESSITY THEREFOR. A bequest for the establishment of a training school will not be held invalid on the ground that the necessity for such charity has been removed by provision therefor in the public schools. It is not open either to the parties or the court to enter upon such an inquiry.

*Appeal from Buchanan District Court.*—HON. FRANKLIN C. PLATT, Judge.

SATURDAY, MARCH 14, 1914.

THE opinion sufficiently states the case.—*Affirmed.*

*W. H. Norris* and *E. B. Stiles,* and *M. A. Smith,* for appellants.

*Lake & Harmon,* for intervener First Nat. Bank of Independence.

*Hasner & Hasner,* for appellee.

WEAVER, J.—Perry Munson, a resident of Independence, Iowa, died testate December 30, 1893, and his will was duly admitted to probate. He left surviving him neither widow nor lineal descendant. He was a man of considerable wealth, and among the items of his estate were one hundred shares of the stock of the First National Bank of Independence. The validity of the disposition made by him of these shares of stock is the question we are called upon to decide. The provisions of the will in this respect read as follows:

(7)   My stock in the First National Bank of Independence, Buchanan county, state of Iowa, is to be kept in my name and the dividends declared on the same are to be paid to my brother John J. Munson, and to my sister Sarah R. Munson at the making and payment of said dividends during the lifetime of each of said persons. On the death of both John J. Munson and Sarah R. Munson the said stock is to be turned over to the board of directors of the library and industrial training school hereinafter provided for.   .   .   .

(9)   I desire to establish at Independence, Iowa, an industrial training school for children and a library building to be used by the people of Independence, Iowa; but not having the means that I can devote to that use to at once put the same in full operation I have put into the hands of three trustees, who are hereinafter named, the sum of fifteen thousand dollars for the purpose of erecting a building suitable for use as a library and as an industrial training school building which is to be used by the free public library of Independence, Iowa, for all time free of rent or charges; except the city of Independence may be required to furnish the free use of water from the city waterworks, and the other parts to be used for an industrial training school, and in the construction of said building I desire that it shall be well and substantially built and shall also be constructed with such finish as to be an ornamental building to the city.

(10)   I hereby name, constitute and appoint Wallace Francis, Michael Tims, and Jed Lake the trustees to take and use the fifteen thousand dollars in the construction of the building to be used for the free public library of Independence, and for the industrial training school and I have made a contract with them for doing the said construction and have

placed in their hands the said sum of fifteen thousand dollars so that they may erect the building and put the same to use during my life, but for reasons given to them by me it is agreed that the building is to be run in their name during my life, but after my death is to be incorporated under the laws of Iowa, and in making such incorporation I direct that the building and all funds I give to the same be so cared for that all persons who desire to be educated in such industrial training school shall have all its privileges without regard to sex, race, color or other conditions than that they are fitted for the training and shall comply with such reasonable rules and regulations as may be made for the control of said training school. I also direct that such incorporation shall be so made that others may make bequests for the extension of the school and that such bequests may be used as the donors may designate. It being my wish and desire to have this school founded on the most liberal principles as to its use for the benefit of the persons to be educated therein and to make of them useful men and women.

(11) On the death of my brother John J. Munson and my sister Sarah R. Munson the stock in the First National Bank of Independence, Iowa, shall be transferred to the board of directors of this industrial training school and used by them in carrying out the objects of the school and in case the stock in the People's National Bank of Independence, Iowa, passes to the board of directors of the library and training school as provided in the 2d and 3d items of this will the same shall be turned over to the board of directors provided for this industrial training school to be used by them for the promotion of the objects of said training school.

(12) I also further direct that if after getting a plan of building and an estimate of the cost of the same with the furniture, fixtures and heating the same it shall be found that such a building as is desired for the library and industrial training school cannot be built for the money herewith appropriated the said trustees named, shall put this sum of fifteen thousand dollars at interest taking good security for the same until the amount and interest will be sufficient to construct the building. When said sum is sufficient to construct the building as desired, then the said trustees shall proceed to construct the building as directed. And in case any other party will furnish the amount in addition to this fifteen

thousand dollars that is necessary to construct, complete and furnish said building then so soon as that amount is provided the said trustees shall at once proceed to construct the said building and complete the same as soon as practicable.

(13)    I make, constitute and appoint my brother John J. Munson the executor of this will and I especially charge him with the carrying out of the bequest as to the building for a library and industrial training school so far as is necessary to have the articles of incorporation make the use of the same liberal to all and to provide for its extension by others if they so desire and in case the building is not erected before the said John J. Munson is appointed executor under this will I hope he will interest himself to see that the building is well and substantially built and that it is ornamental to the town and is well finished and furnished. As the contract I have made with the trustees, Wallace Francis, Michael Tims and Jed Lake, is to be deposited with this will so as to become a part of my requests as to what is to be done, I desire that my executor see that the terms of the same are carried out in good faith as far as he can do so by his council and advice.

The will was executed July 24, 1893. On the same day the testator entered into a written contract with Wallace Francis, Michael Tims, and Jed Lake, citizens of Independence, reciting the purpose of the testator to place in the hands of the persons named $15,000 for the erection of a building suitable for a free public library and training school at Independence, and directing them within one year after his death to organize a corporation to hold, manage, and control such property and the funds which might thereafter be donated for the promotion of its charitable purposes. On October 11, 1894, and within one year after the testator's death, such corporation was in fact organized under the name and style of the Munson Industrial Training School. Before the death of the testator, the said trustees received from him the sum of $15,000, and thereafter did erect the building as proposed, though at the testator's request his connection therewith was withheld from the public during his lifetime.

This action was begun in equity April 25, 1912. The

plaintiffs in their petition recite the facts of the death of John J. Munson and Sarah R. Munson, to whom the dividends upon said bank stock had been given for life under the provisions of the seventh paragraph of said will, and allege that plaintiffs are the only heirs at law of the testator, and as such are entitled to demand and receive said stock to their own use. Upon this showing they ask a decree confirming their claim, and that the bank be ordered to deliver into their hands the certificates of said shares. The bank pleads the facts relating to the will, lays no claim to the shares, and avers its readiness to deliver the certificates to the party or parties whom the court shall find entitled thereto. The Munson Industrial Training School intervenes, denies plaintiffs' claim to the stock, and avers ownership thereof in itself. It pleads the will of Perry Munson, deceased, and the trust agreement above mentioned as its sources of title. They further plead the performance of said trust agreement, the incorporation of the trust according to its terms, the erection of the building, the use thereof as the home of the free public library of the city, and the readiness of said corporation and its trustees to organize and maintain an industrial school such as prescribed by the terms of the will. By way of reply plaintiffs deny the claims of the intervener and say further that during the eighteen years since the death of Perry Munson no effort has been made to conduct or maintain a training school in said building; that no other gifts or bequests have been made in promotion of said charity; that no efforts have been made to increase said fund; that the amount of said bequest is wholly inadequate to maintain such a school as the will seems to contemplate; that the building is also inadequate and unfitted for said purpose; and that the officers and directors of the corporation, though knowing all the facts relating to the estate, have asserted no claim to the stock during the time elapsed since the testator's death, and by reason of their failure to establish or maintain the proposed school have forfeited all right thereto. It is.

further alleged that the school district of Independence has inaugurated and maintains a fully and adequately equipped manual and industrial training school, and the conditions which operated upon the mind of the testator inducing his attempt to found such a school no longer exist. There is also a plea in the nature of a claim of adjudication based upon the approval of the final report of the executor of the will.

The parties stipulated the facts upon which the case was submitted to the trial court. The terms of the will, the trust agreement, the corporate organization, the erection of the building at a cost of $15,000, the use of the building by the free public library of Independence, the death of John J. Munson and Sarah R. Munson, and the status of plaintiffs as the only heirs of Perry Munson are all conceded. The description and dimensions of the building are stated, and the fact that at present the rooms are under lease to the ladies' societies of Independence is admitted. It is also admitted that no industrial school has been maintained except during the winter seasons, when volunteer teachers have on stated days conducted sewing schools there for poor children. Nor is there any dispute that the public schools of the city now teach domestic science and manual training.

Upon the record thus made the trial court found and decreed that the provisions of the will devoting said bank stock to the maintenance of an industrial school, as provided for in said bequest and trust agreement, constitute a valid gift; that the corporation organized and known as the Munson Industrial Training School is the rightful beneficiary of said gift and the lawful owner of said stock for the uses and purposes designated by the donor. From this decision the plaintiffs have appealed.

The issues have been stated at more than ordinary length in the belief that a full and clear understanding of the admitted facts will so demonstrate the correct conclusion of the questions of legal right that an extended discussion of

principles, rules, and precedents will be unnecessary. Taking up the points argued by counsel in the order of their statement, they are as follows:

I. The gift is void because of its vague and indefinite character. The rule here involved is one upon which the courts have frequently been called to pass, and the general principles applicable to such cases have all been so thoroughly and frequently considered that we need here do little, if anything, more than to call attention to what we deem to be the settled conclusions.

It will be conceded that here and there will be found a decided case which tends to restrict the scope of valid gifts to charitable uses within narrow limits, but the doctrine that 1. CHARITABLE such gifts appeal to the favor of courts and GIFTS: validity. will be given effect if consistent with law, and that to such ends the most liberal rules within the allowable limits of chancery jurisdiction will be resorted to, if necessary for their support, is so generally upheld and applied as to remove the question from the field of debate. See Marshall, J., in *Harrington v. Pier,* 105 Wis. 485 (82 N. W. 345, 50 L. R. A. 307, 76 Am. St. Rep. 924). So pronounced is this rule that a charitable trust will often be sustained under circumstances where a private trust would fail. *Ingraham v. Ingraham,* 169 Ill. 432 (48 N. E. 561, 49 N. E. 320); *Jackson v. Phillips,* 14 Allen (Mass.) 539; *Sanderson v. White,* 18 Pick. (Mass.) 333 (29 Am. Dec. 591); *Johnston's Estate,* 141 Iowa, 109; *Duggan v. Slocum* (C. C.) 83 Fed. 244; *Williams v. Pearson,* 38 Ala. 299.

Indefiniteness as to the individual beneficiary is no objection to the validity of a charitable trust. On the contrary, such indefiniteness is rather a characteristic feature of a 2. SAME: indefi- good devise to charitable uses. It is sufficient niteness. .if the class to be benefited is designated in a general way and the practical application of the gift to its intended uses is confided to a trustee. *Heuser v. Harris,* 42 Ill. 425; *Andrews v. Andrews,* 110 Ill. 223; *Kronshage v.*

*Varrell,* 120 Wis. 161 (97 N. W. 928); *Harrington v. Pier,* 105 Wis. 487 (82 N. W. 345, 50 L. R. A. 307, 76 Am. St. Rep. 924); *Estate of Johnston,* 141 Iowa, 111; *Grant v. Saunders,* 121 Iowa, 80; *Phillips v. Harrow,* 93 Iowa, 103; *Chapman v. Newell,* 146 Iowa, 422; *Tappan's Appeal,* 52 Conn. 412.

That gifts to establish or endow schools for the mental or moral improvement of the people, and especially of those members of society who are handicapped by actual or comparative poverty, are lawful public charities

3. SAME: establishment of schools.

is so well settled as to require no elaboration of argument or citation of authority. A very large proportion of the gifts by charitable and public-spirited testators is of this class, and they are uniformly sustained, when coupled with no condition or restriction inconsistent with established principles or rules of law.

The intent and purpose of the testator in this case are so clearly stated and expressed by him as to be open to no reasonable doubt. He says: ''I desire to establish at Independ-

4. SAME: definiteness.

ence, Iowa, an industrial training school for children and a library building to be used by the people of Independence, Iowa.'' .Language more adequately describing the nature of the charity or the beneficiaries thereof could. hardly be chosen. He then proceeds to name the trustees who should administer his bounty until a corporation could be organized to take over and exercise the powers and duties necessary to the proper execution of the trust. Such a gift reveals no fatal lack of definiteness. Even if desirable, it would be practically impossible for the donor of such a charity to prescribe the details of its organization, work, and operation, and he adopted the usual and only practicable plan of empowering the trustees of his gift to make all reasonable rules and regulations for its management within the general scope of his expressed purpose.

In addition to the cases already cited, the books are filled with precedents to the effect that, where the general nature

and purpose of the charity is expressed or is reasonably ascertainable, the matter of its practical administration may be committed to trustees.   To quote from *Harrington v. Pier*, *supra:*

It is sufficient if there be a trust and a particular charitable purpose, as distinguished from a gift to charity generally.   The court may supply the trustee to administer the trust; the trustee may select the beneficiaries from within the general class named by the donor, and when necessary may work out the details of the declared purpose within its stated general limits.   Certainty of beneficiaries who can invoke judicial power to enforce the trust is not only unnecessary, but is inconsistent with the very nature of a trust for charitable uses, in that the beneficiaries, in a general sense, are the members of the public at large.   A public charity, within the rule mentioned, is sufficiently definite as to purpose if its general purpose be clearly stated, or it can be made otherwise certain by the trustees clothed with the power of administering the trust within the limits of the declared purpose.

None of the cases cited upon this point by appellants are controlling upon the question here presented.   It is possible that decisions of the courts of New York and a few others which have followed those precedents may not be in entire harmony with the views here expressed, but it is to be said that these precedents have their origin in the influence of the peculiar statutes of that state and constitute exceptions to the rule adhered to by a large majority of the courts in other jurisdictions.

It is unnecessary to prolong citations from the authorities illustrating the various gifts to charity which have been sustained against objections of this kind.   Those already mentioned are sufficiently illustrative of the rule to which we adhere.   There is in this case no lack of definite statement to leave either the trustees or the court in doubt as to the meaning and intent of the donor.   It requires no resort to the *cy pres* doctrine in order to designate the nature of the char-

ity to be promoted or the class to be benefited. We have only to take the testator at his word and give it effect according to its clear meaning. No other conclusion is possible, unless we are to abandon the rule which requires the court to sustain gifts to charity whenever it is reasonably possible and go out of our way to hunt for some plausible ground upon which to defeat them.

II. It is next argued that the will violates the statute against perpetuities. That statute in general terms makes void any disposition of property which suspends the absolute power of controlling the same for a longer period than during the lives of persons then in being and twenty-one years thereafter.

5. SAME: perpetuities: application of statute: charities.

Code, section 2901. Counsel concede, as indeed they must, that gifts to charitable uses do not come within the prohibition of this statute. *Phillips v. Harrow,* 93 Iowa, 92; *Jones v. Habensham,* 107 U. S. 174 (2 Sup. Ct. 336, 27 L. Ed. 401); Gray's Perpetuities, section 600; *White v. Keller,* 68 Fed. 801 (15 C. C. A. 683); *Re Cleven's Estate,* 161 Iowa, 289. But it is sought to except the gift in question from the effect of this rule. Indeed, counsel speak in one place of the trust provided for by the testator as "noncharitable," though we think perhaps it is a chance expression and not a declaration of their view of the law. It is true that the gift is for the double purpose of housing the free public library of Independence and for the benefit of children, without limiting the same to the poor or needy, but such limitation is not necessary.

The word "charity," as used in law, has a broader meaning and includes substantially any scheme or effort to better the condition of society or any considerable part thereof. It has been well said that any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightening, benefit, or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience, is a charity. *Historical Society v. Academy,* 94

Mo. 459 (8 S. W. 346); *Jackson v. Phillips*, 14 Allen (Mass.) 539; *Re Lennon*, 152 Cal. 327 (92 Pac. 870, 125 Am. St. Rep. 58, 14 Ann. Cas. 1024); *Hoeffer v. Clogan*, 171 Ill. 462 (49 N. E. 527, 40 L. R. A. 730, 63 Am. St. Rep. 241); *Price v. Maxwell*, 28 Pa. 23; *Miller v. Porter*, 53 Pa. 292; *Chapman v. Newell*, 146 Iowa, 415.

It is further suggested that this gift is in the nature of a gift over after the lapse of a prior gift, and is therefore an exception to the rule. The will is not in our judgment open 6. SAME: perpetui- to this interpretation. The substance or ef-ties: statute. fect of it is to give or devote the bank stock to the describing charity, subject, however, to the right of John J. Munson and Sarah R. Munson to receive the dividends thereon during life. They were given no title or property right to the shares as such, and they were not to have possession or control thereof. The title of the stock was in the trustees or the corporation from the death of the testator, subject only to the incumbrance or charge by which the dividends were devoted to a brother and sister of the testator for a period which was bound to terminate within the time limit fixed by the statute above cited.

Again it is said that the will, while providing for a corporation to take over the trust, does not limit the time for its organization, and there was no certainty that it would be or-7. SAME: perpetui- ganized within the limit of the statute against ties: statute. perpetuities. If we were to admit that such uncertainty would have the effect claimed for it, the fact that the testator had bound his trustees by contract to organize the corporation within one year after his death, and that such contract is referred to and reaffirmed by him in his will, supplies all the certainty required in this connection. Moreover, it is conceded that the trustees did in fact incorporate within the year, and, had they failed of their duty in this respect, it was within the power of the court to compel an observance of their obligations.

Finally, upon this point, it is said there is no training

school in existence which meets the requirements of the will, and for that reason the fund does not vest in the corporation.

8. SAME.

In view of the conceded facts, this objection is unreasonable. While the testator secured the erection of the proposed building in his lifetime, the money given prior to his death was wholly invested and intended by him to be wholly invested in its construction. By the terms of the gift in his will, the fund for the support of the school was not practically available until the death of the brother and sister, and neither the trustees nor the corporation are chargeable with any neglect or laches because they did not anticipate such death and attempt the establishment and conduct of a school without means therefor. The statute against perpetuities is intended to regulate private trusts, but —"a public or charitable trust may be perpetual in its duration and may leave the mode of its application to the discretion of the trustees." *Jackson v. Phillips*, 14 Allen (Mass.) 550; *Sanderson v. White*, 18 Pick. (Mass.) 333 (29 Am. Dec. 591).

The charitable character of the trust being made apparent, all doubts will be resolved in its favor. The case of *Meek*

9. CHARITABLE TRUSTS.

*v. Briggs*, 87 Iowa, 610, and others of the class cited by appellants deal with private trusts and have no proper application to trusts in aid of charity.

III. It is also the contention of the appellants in argument that the legacy or gift in this case is inadequate in amount to accomplish the intended purposes; that the build-

10. SAME: validity.

ing provided is too small to accommodate a school of the kind contemplated; that the need of such instruction has been supplied by the school authorities, and there are no "proper beneficiaries" of such charity.

There is no evidence whatever of the amount of money required to put such a school into successful operation, and it would be going far for the court to assume, as a matter of

common knowledge, that the testator's charity is doomed to failure. It was the right of the testator to do as he would with his own, and even if he saw fit to invest $30,000 or more in the experiment of founding a school, hoping that his gift might stimulate others of like mind and purpose to supplement such fund with their bounty, and knowing that if such aid was withheld such school would very possibly fall into decay or at best achieve very limited success, it is not for the court to thwart his benevolent purpose for the benefit of his collateral relatives, for whom he appears to have otherwise liberally provided.

It is a settled rule that a charitable gift, devise, or bequest will not be avoided simply because it cannot take effect as fully as the donor intended but will be given effect so far as it can. Such was the holding of this court in *Miller v. Chittenden*, 4 Iowa, 269. So, also, it is held by the Massachusetts court that a gift to charitable uses will be sustained wherever it is possible, and that "where a literal execution may become impracticable or inexpedient, in part or even in whole, it will be carried into effect so as to accomplish the general purpose of the donor, as nearly as circumstances will permit, and as such general charitable intent can be ascertained." *Sanderson v. White*, 18 Pick. (Mass.) 333 (29 Am. Dec. 591). A devise to charity is not necessarily void because it contemplates possible contributions from others which may never be realized. *Re Daly's Estate*, 208 Pa. 58 (57 Atl. 180). The cited case is quite in point with the one at bar, and its discussion of the principles governing the courts in relation to such gifts fully bears out the views we have already expressed. It may be that the building erected and the funds provided are insufficient to afford manual training for all persons eligible thereto under the terms of the trust, but that is no reason why the corporation should not be permitted to organize and carry on a school for the benefit of so many as may be accommodated with the means at its disposal. No charity is unlimited in its resources, and all must draw a line

upon admission to their benefits, when their ability to extend such benefits is exhausted.

There is no merit in the proposition that this charity has been superseded by the adoption of manual training in the public schools. There is no such apparent surfeit of educa-

11. SAME: necessity therefor.

tional facilities as enables the court to say there is no opportunity for philanthropic and public-spirited men of wealth to devote their means to plans for promoting the intellectual development and manual skill and efficiency of young people by the establishment of institutions devoted to that purpose. Nor do we think it open to the parties or to the court to enter upon any such inquiry. See *In re Johns' Will*, 30 Or. 494 (47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242) ; also *Green v. Blackwell* (N. J. Ch.) 35 Atl. 375. So far as common observation may teach us the time when sweet charity and mutual helpfulness and prosperity, thrift, and independence shall have become so universal as to leave no room for the exercise of the widest liberality of the private giver, is yet a considerable distance in the future. We have no occasion to inquire into the wisdom of this gift or of the plan adopted for its administration. There is nothing in it which offends against the law, public morals, or public policy. The testator was acting within his undoubted right to select the beneficiaries of his estate, and the law and the courts are bound to respect his clearly expressed wishes.

No sufficient reason is suggested for interfering with the decree of the trial court, and it is hereby—*Affirmed.*

LADD, C. J., and EVANS and PRESTON, JJ., concur.