DANIEL DAVID PALMER, appellee and cross-appellant, v. RALPH EVANS, HERBERT HENDER and WILLIAM D. WAGNER, executors of estate and trustees under will of Bartlett J. Palmer, deceased, et al., appellants and cross-appellees.

No. 51137.

(Reported in 124 N.W.2d 856)

1178

November 12, 1963.

Rehearing Denied January 14, 1964.

Lane & Waterman and Doerr, Dower & Rehling, all of Davenport, for appellants and cross-appellees.

Betty, Neuman, Heninger & McMahon and Lambach, Shorey & Plath, all of Davenport, for appellee and cross-appellant.

SNELL, J.—This is an interlocutory appeal, perfected with permission (R. C. P. 332), in a declaratory-judgment action (Division XI, R. C. P.), from the rulings on points of law tendered by the pleadings and motions (R. C. P. 105).

The issues arise from an attack upon a will and the administration of an estate in the process of probate in Scott County. The issues involve the application of and the right to invoke the Iowa mortmain statute, the rule against perpetuities, the cy pres doctrine, the rules of will construction, plaintiff's right and standing to assert his claimed rights, and waiver and estoppel.

The several issues have been exhaustively researched and ably argued by counsel. Each of the tendered issues would be a challenging question for discussion and worthy of determination but we will in the main limit our discussion to the matters necessary for decision of the case.

Bartlett J. Palmer, a man of wealth, a resident of Iowa, died testate, on May 27, 1961. He was a widower survived by a son, plaintiff herein. Decedent's will has been admitted to probate. Executors and trustees nominated therein have qualified and are among the defendants herein.

Articles I, II and III of the will are not material to this appeal.

Article IV expresses testator's appreciation of his associates, the purposes prompting the provisions of the will, and the belief that decedent's son had " 'been abundantly provided for through the provisions made for him during the lifetime of my wife and myself and by the Will of my late wife, through both of which he will receive for practical purposes substantially the entire fortune accumulated through our efforts and the efforts of those whom I now desire to reward.' " This is not very important except to show that the will was not a deathbed conclusion resulting from the kind of solicitation some authorities say mortmain statutes were intended to discourage.

Articles V and VI make specific bequests not material here.

Articles VII, VIII and IX provide for the ultimate disposition of certain personal property and interests in real estate all tied in and consistent with the subsequent provisions of the will.

Article X is the real battleground in the case. It provides:

"I give, devise and bequeath all of the rest, residue and remainder of my estate, * * * [extensive references] (all of which property is hereafter referred to as the 'Trust Estate') to the Trustees hereinafter designated, and to their successors and assigns, for the following uses and purposes:

"(a) It has been my long and cherished aim and purpose to establish a museum in memory of my wife, Mabel H. Palmer, and me, and to aid in the perpetuation of the Chiropractic philosophy, science and art. Therefore, to effectuate my aim and purpose I direct the Trustees, as soon as possible after my decease, to cause a nonprofit corporation to be organized under the laws of the State of Iowa, to be known as 'The B. J. and Mabel H. Palmer Memorial' with such powers, purposes, by-laws and provisions applicable to the operation, management and perpetuation thereof as they shall deem to be in the best interests of the public, and for the advancement of the Chiropractic philosophy, science and art, and upon the organization thereof, to transfer, convey and deliver the Trust Estate or the proceeds of sale or other disposition thereof to said corporation. It is my desire that, to the extent legally permissible and economically feasible, the museum be housed in the property in Davenport, Iowa, now constituting my residence and in such additions thereto as may be deemed necessary, and that if said property is not made available therefor that suitable quarters be purchased or erected for the purposes of said museum. It is further my desire that my various collections, art treasures, books, contents of my Davenport home and of 'Little Bit O' Heaven', be housed in said museum. Any funds of said corporation not required for the establishment, operation, perpetuation and purposes of the museum shall be used to advance the Chiropractic philosophy, science and art. No part of the net earnings of said corporation shall inure to the benefit of any private shareholder, member or individual and

no substantial part of the activities thereof shall be the carrying on of propaganda, or otherwise attempting to influence legislation.

"(b) Said Trustees shall select the initial directors, trustees or officers of said corporation, which may include themselves or any of them, fix their tenure of office, determine the method for selection or designation of successor directors, trustees or officers, determine qualifications for membership in said corporation, if any, and generally shall perform such other acts as shall be necessary in order to provide for the organization thereof, its management and operation. If my son, Daniel David Palmer, or my daughter-in-law, Agnes Palmer, as the case may be, shall agree to transfer his or her remainder interest in the property of my wife, referred to in Article VII hereof, to said corporation, then the Trustees shall designate him or her as one of the directors or trustees of said corporation if he or she desires to serve as such."

Article XI provides:

"I hereby expressly authorize and empower my Executors with respect to my estate and my Trustees with respect to the Trust Estate herein created, severally and to the extent applicable to each, in their sole and absolute discretion:

"1. To hold, retain, manage, improve, sell, exchange, transfer, convey, lease for any term of years (although such term extends beyond the duration of the Trust), mortgage or otherwise encumber, purchase, acquire, deal with or dispose of any property of my estate or the Trust Estate; to invest or reinvest such property in any securities or property whatsoever, without limitation of any statute or rule of law relating to investments by fiduciaries; to make contracts, execute and deliver good and sufficient deeds, transfers and conveyances; to borrow money and extend credit on behalf of my estate or the Trust Estate; to deposit funds in any bank or banks; to keep such portion of the funds uninvested as they may deem expedient; to hold securities in the name of a nominee or nominees; to collect all income and pay all expenses of administering my estate or the Trust Estate, including reasonable compensation of the Executors and Trustees; to employ agents, employees and attorneys

and fix their compensation; to prosecute, defend and compromise any claim of or against my estate or the Trust Estate; and generally to exercise all rights or powers with respect to such property which may be lawfully exercised by persons owning similar property in their own right. The Executors and Trustees shall not be required to report to or obtain the approval of any court in performing their duties hereunder or in administering my estate or the Trust Estate.

"2. No person dealing with the Executors or Trustees shall be bound to see to the application of any purchase money or other consideration or any money loaned under mortgage or pledge, or to inquire into the power and/or authority of the Executors or Trustees or into the validity, expediency or propriety of any sale, option, assignment, transfer, exchange, conveyance, mortgage or pledge of any or all of the assets or property of my estate or the Trust Estate."

The extremely broad and unrestricted authority of the executors and trustees contained in Articles X and XI should be kept in mind.

Articles XII, XIII, XIV, and XV provide for the payment of inheritance and estate taxes from the residuary estate, nominate executors, trustees, successors in interest and identify individuals.

I. Mortmain statutes are not new to the law. They have been enacted and enforced since the time of the Magna Charta. From jurisdiction to jurisdiction and from time to time the wording has varied, apparently having different specific limitations in mind, and resultantly with varying results.

The rule against perpetuities is also venerable with age but more uniform in its operation.

II. The Iowa wills statute is found in section 633.1, Code of Iowa. It provides:

"Disposal of property by will. Any person of full age and sound mind may dispose by will of all his property, subject to the rights of homestead and exemption created by law, and the distributive share in his estate given by law to the surviving spouse, except sufficient to pay his debts and expenses of administration."

Under this statute the power of disposal by will is complete, subject only to statutory limitations.

What is commonly called the Iowa mortmain statute is found in section 633.3, Code of Iowa. It provides:

"Limitation on disposal by will. No devise or bequest to a corporation organized under the chapter relating to corporations not for profit or to a foreign corporation of a similar character, or to a trustee for the use or benefit of any such corporation, shall be valid in excess of one fourth of the testator's estate after the payment of debts, if a spouse, child, child of deceased child, or parent survive the testator."

The Iowa rule against perpetuities is in a separate chapter of the Code dealing with conveyances. Section 558.68 provides:

"Perpetuities prohibited. Every disposition of property is void which suspends the absolute power of controlling the same, for a longer period than during the lives of persons then in being, and twenty-one years thereafter."

■ ■ III. In the interpretation of a will "the primary and controlling consideration 'is the determination of the intention of the testator. When that has been done the intention must be made effective if it is a lawful one, and not against public policy. The intention of the testator must be ascertained from the will itself and from nothing else, if its language is plain and unambiguous. Where the intention is thus clearly and unequivocally expressed there is no need for judicial construction or extrinsic evidence, and all other rules of testamentary interpretation are inapplicable and must yield.'" In re Estate of Artz, 254 Iowa 1064, 1069, 1070, 120 N.W.2d 418, 422. In re Estate of Syverson, 239 Iowa 800, 804, 805, 32 N.W.2d 799.

A general rule is stated in Volume 4, Page on Wills, Bowe-Parker Revision, section 30.13, as follows:

■ "It is said that it will ordinarily be presumed in construing a will that the testator is acquainted with the rules of law and that he intended to comply with them accordingly. If two constructions of a will are reasonably possible and one of these constructions is consistent with the law and the other is inconsistent, the presumption that the testator intended to com-

ply with the law will compel that construction which is consistent with the law to be adopted."

The Iowa law is in accord. In Jensen v. Nelson, 236 Iowa 569, 571, 19 N.W.2d 596, 598, it is said:

"It is well established, even where no charitable bequest is involved, that if any testamentary provision is open to two constructions, one of which would render it void or inoperative, and another which would render it valid, the latter is always to be taken and the former rejected. [Citations] This rule is particularly applicable where a charitable bequest is drawn in question. An analogous rule is also frequently applied to bequests to charity."

See also Layton v. Tucker, 237 Iowa 623, 626, 23 N.W.2d 297; In re Estate of Ditz, 254 Iowa 444, 449, 117 N.W.2d 825, 828; Restatement of the Law of Property, sections 374 and 375.

In Restatement of the Law of Property, section 241b, it is said:

"The process of construction is to be distinguished from the ascertainment of the effect of an instrument. After the intent of the conveyor has been judicially ascertained, there remains the task of determining whether there are any rules of law which restrict, or prevent, the effectiveness of the meaning so ascertained."

Our first step in the problem before us is, under these well established rules, the ascertainment of the intent of the testator as disclosed by the will itself.

There is nothing ambiguous about the intent of the testator. The will itself is skillfully drawn. The testator carefully and clearly states his desires, the reasons for what he provides and outlines the mechanics for the accomplishment of his purposes.

In Article X of the will the testator says, "I give, devise and bequeath * * * to the Trustees * * * and to their successors and assigns, for the following uses and purposes:" The specifically express purposes are then stated, i.e., the establishment of a museum in memory of his wife and himself and to aid in the perpetuation of the Chiropractic philosophy, science and art. The primary purpose of the testator was the establishment of a memorial to be operated and managed as the trustees deem "to

be in the best interests of the public", and for the advancement of Chiropractic philosophy, science and art. The corporation to be created was not an existing legal entity presently able to benefit from the testator's bounty. It was a tool to be created by the trustees with only such life as might be breathed into it by the trustees themselves. In subparagraph (a) of Article X the trustees are directed to cause the corporation to be organized *with such powers, purposes and by-laws as they shall deem to be necessary.* (Emphasis supplied.)

In subparagraph (b) it is provided that the trustees shall select the initial directors, trustees or officers of the corporation (they might include themselves), fix their tenure of office, determine the method for selection or designation of successors, determine qualifications for membership in the corporation "and generally shall perform such other acts as shall be necessary in order to provide for the organization thereof, its management and operation."

While the property "as soon as possible" after decedent's death was to be transferred to the corporation to be formed the bequest was to the trustees who had power and discretionary authority that was not to be questioned in carrying out the intent of the testator. See paragraph 2 of Article XI quoted, supra.

The testator did not express an intent to do something for the corporation. Rather it was testator's intent that a corporation be formed to do something for him. "Where the existence of the particular organization is not of the essence of the gift, where the primary purpose of the testator was that the property should be applied to certain charitable purposes, the disposition does not fail." Volume IV, Scott on Trusts, section 397.3, page 2793.

IV. Having determined the intent of the testator there remains the task of determining the effect of the provisions in the will. As stated in Division III, supra, a construction that will render the will valid is preferred.

█ As applied to charitable trusts we recently said in In re Will of Knouse, 254 Iowa 1339, 1342, 121 N.W.2d 151, 153:

"Other general principles of the law as it relates to charitable trusts are that they are favorites of the law. [Citations] We have also quoted with approval Lord Hardwicke's statement: 'There is no authority to construe it [a charitable trust] to be void, if by law it can possibly be made good.'"

Plaintiff urges that the will contravenes the Iowa mortmain statute. Many authorities considering comparable will provisions involve not only mortmain statutes but the rule against perpetuities and the cy pres doctrine.

■ We deem the wording and limited application of section 633.3, Code of Iowa, significant. By its wording the statute applies only to certain corporations or trustees for the use of such corporations. There is nothing in the statute restricting or limiting devises or bequests to individuals or groups not mentioned. There is nothing in the statute proscribing inter vivos gifts of any kind. In re Estate of Ihmes, 154 Iowa 20, 24, 134 N.W. 429, 430, quoted with approval in Decker v. American University, 236 Iowa 895, 901, 20 N.W.2d 466.

Much has been written on the purpose and policy prompting mortmain statutes. Professor Scott in his memorable work on Trusts, Volume IV, Scott on Trusts, in section 362, says:

"There are two grounds of policy underlying these statutes. The first ground is that it is against public policy that a large part of the wealth of the community, particularly in the case of land, should be taken out of commerce and devoted to charitable purposes. The second ground is that it is against public policy to permit a person on his death to give to charity property which he is unwilling to give to charity while he lives; a policy against the disinheriting of heirs in favor of charity by deathbed dispositions.

"In the legislation in England and in the United States imposing restrictions upon dispositions for charitable purposes it is not always clear which of these two grounds of policy is the basis of the legislation. Ordinarily to a certain extent the legislation has been dictated by mixed motives. Undoubtedly, however, in the earlier statutes the primary purpose was to prevent property, particularly land, from being taken out of commerce,

and the purpose of the later statutes is perhaps primarily to protect the family from being disinherited.

"* * *

"An analysis of the statutes imposing restrictions upon dispositions for charitable purposes shows how the problem has been attacked by various methods from time to time. Sometimes the statutes are aimed at the taking or holding of property by corporations; sometimes they impose restrictions upon the creation of charitable trusts. * * * Sometimes the restrictions are applicable only to testamentary dispositions; sometimes they are applicable also to dispositions inter vivos."

In section 362.3 Professor Scott continues:

"The first attempt by statute in England to restrict the creation of trusts for charitable purposes, and not merely to restrict the taking or holding of land by corporations, was by the enactment of the Georgian Statute of Mortmain. * * * Although the purpose of the statute, as recited in its preamble, was to restrict 'dispositions made by languishing or dying persons, or by other persons, to uses called charitable uses, to take place after their deaths, to the disherison of their lawful heirs,' the purpose of the statute must have been, in part at least, to prevent the taking of land out of commerce, and not merely to protect the heir of the settlor, since the statute applied to testamentary dispositions of money to be laid out in the purchase of land, although it did not apply to personal property bequeathed as such for charitable purposes. * * *."

Section 362.4 says:

"In some states there are no restrictions upon dispositions, whether inter vivos or testamentary, for charitable purposes. In other states there are various kinds of restrictions imposed by statute, some of them dealing with devises or bequests for charitable purposes, some of them dealing with the power of charitable corporations to take or hold property."

Our court recognized the problem in Rine v. Wagner, 135 Iowa 626, 630, 113 N.W. 471, 473, saying:

"Whether or not it is a limitation upon the power of a corporation to take, or upon the power of a testator to give, is a

question not free from doubt, and upon which much might be said in favor of either conclusion."

It should be kept in mind that at the time Rine v. Wagner was decided the words "or to a trustee for the use or benefit of such corporation" did not appear in the statute.

Regardless of the legislative policy prompting the enactment of our statute it is clear that the statute is not a prohibition against all testamentary gifts in excess of one fourth of the estate. Neither does the statute afford any protection to a spouse or heir except as specified.

Our statute merely makes invalid certain testamentary gifts to nonprofit corporations or trustees for the use or benefit of such corporations.

V. Was the testamentary gift to a proscribed corporation or trustees therefor?

■ Interests of beneficiaries vest upon the death of decedent. In re Estate of Cooper, 229 Iowa 921, 925, 295 N.W. 448; Reichard v. Chicago, Burlington & Quincy Railroad Co., 231 Iowa 563, 579, 1 N.W.2d 721, 731.

■ "The equitable title to property in the custody of executors and administrators is in the beneficiaries, subject, of course, to the claims of creditors." In re Estate of McElfresh, 218 Iowa 97, 100, 254 N.W. 84, 85.

Page on Wills, Bowe-Parker Revision, Volume 6, section 59.2, says:

"The title in the executor, however, is a mere legal title for purposes of administration, and the beneficiary has an inchoate or equitable interest. It is said that the legatee's rights vest at the death of the testator although possession and legal title are postponed and although he may never receive legal title and possession due to intervening rights of creditors or other beneficiaries." See Reichard v. Chicago, Burlington & Quincy Railroad Co., supra.

At the time of B. J. Palmer's death the contemplated corporation was not in being. It was conceived in the mind of the testator and was to be created for a particular purpose with form and substance prescribed by the trustees. The corporation was not the beneficiary. It took nothing for itself. It could do

nothing by itself except as authority therefor was promulgated by the trustees. The testamentary gift was to the trustees for the use and benefit, not of the corporation, but the ultimate beneficiaries, i.e., the public through the use of the memorial and "for the advancement of Chiropractic philosophy, science and art." The trustees were not in reality trustees for the corporation. They were trustees for testator and his ultimate purpose and beneficiaries with directions for the creation of an administrative tool in the accomplishment of testator's purpose.

An able discussion and leading authority although dealing primarily with the rule against perpetuities is found in Codman v. Brigham, 187 Mass. 309, 311, 72 N.E. 1008, 1009, 105 Am. St. Rep. 394. In the cited case the will provided for the holding, investing and management of the residuary estate by executors for twenty-five years. After that time and the payment of specific bequests the executors were to dispose of the estate for " 'the purpose of founding a hospital * * * for the care of sick persons, in indigent circumstances.' " The will then provided:

" 'They shall procure the formation of a corporation, to be called the "Brigham Hospital" with suitable provisions as to officers, their powers and duties for control, direction, conduct and administration of the corporation and the care and management of the funds in its charge; and upon the legal formation and organization of said corporation, my said executors shall transfer to it all the property and estate provided for it as aforesaid, to be by it used and employed for the purposes above declared:—and I give, devise and bequeath said rest and residue of my property and estate accordingly.' "

The estate was substantial. The hospital corporation was not to be formed for twenty-five years. It was contended by the heirs that the gift was void under the rule against perpetuities. The court said:

"The whole language, considered together, transfers the title of all the property to the executors, charged with a trust in regard to the management and disposition of it. This involves the performance of duties beyond those which belong to executors, and they necessarily take as trustees, although the word

'trustee' is not used. [Citations] The trust is for charitable uses, and the instrument creates, from the death of the testator, a public charity. The beneficiaries who are entitled to the equitable interest are sick persons in indigent circumstances, residing in the county of Suffolk, for whose care a hospital is to be established. [Citation] This charitable trust comes into existence immediately on the probate of the will, and it comprises all the rest and residue of the estate, except so much as is needed to make the payments called for in the seven provisions above referred to. Not only the legal but the equitable estate vests immediately, the legal estate in the trustees, and the equitable in that part of the public which is to be benefited. * * *

"It is provided that the fund shall be held and accumulated for twenty-five years before it shall be put to active use for the relief of the suffering. Such a provision is not uncommon, and even though the time for the accumulation may extend beyond the time prescribed in the rule against perpetuities, it is not invalid. [Citations]

"These and the other provisions, in regard to the management of the property, the payments from the income of the sums due the annuitants, the establishment of a corporation, and the transfer of the property to the corporation, are all mere details of administration which the testator saw fit to prescribe, and which do not affect the general character of the charitable gift, or the nature of the title created by the clause in question. Nothing passes directly to the corporation under the will. It takes through a conveyance from the trustees, made in the execution of their trust. [Citations] The corporation is simply a part of the machinery to be provided by the trustees, the better to execute the charitable purpose of the testator. If for any reason it should be impossible to establish such a corporation, the gift would not fail, but the court would apply the doctrine of cy pres, and provide some other method of administering the charity to accomplish substantially the same result. [Citations] * * *

"The contention that the gift is directly to the corporation, limited upon preceding bequests to individuals, and that it may

not take effect until more than twenty-one years after the expiration of a life or lives in being, is therefore not well founded, and the same is true of the argument that the gift to the charity is contingent."

To like effect see Jansen v. Godair, 292 Ill. 364, 127 N.E. 97, and Crerar v. Williams, 145 Ill. 625, 34 N.E. 467, 21 L. R. A. 454.

Language from Gray on Perpetuities, Fourth Edition, section 607 is appropriate:

"If the Court, however, can see an intention to make an unconditional gift to charity (and the Court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and therefore not within the scope of the Rule against Perpetuities. The mode pointed out by the testator is only one way, though the preferable way, of carrying out the charitable purpose; and if it cannot, with regard to the general charitable intention, be carried out in that way, it will be carried out cy pres. Thus while the Court will allow the fund to be transferred to a corporation not in existence at the time of the gift, if such corporation is constituted in a reasonable time, it will not recognize the right of such non-existent corporation to keep the fund locked up until such time as it may please itself to be incorporated. The formation of the corporation is not a condition precedent to the charitable trust, and therefore the trust is not too remote. The cases where charitable gifts to non-existent corporations or societies have been sustained are numerous."

We conclude from a study of testator's will that the provisions constitute a gift in praesenti in trust for charitable uses.

VI. While like Rine v. Wagner, supra, In re Estate of Cleven, 161 Iowa 289, 142 N.W. 986, was decided before the addition of the words "or to a trustee for the use or benefit of such corporation" to our statute, what is said is appropriate to our problem. "The limitation thus imposed by the statute applies only to corporations. It cannot by judicial interpretation be made to include within its provisions that which by

fair construction is excluded." Loc. cit. 295. The opinion then says that the provision of the statute cannot be extended by implication to include gifts to trustees for charitable purposes.

■ It should be kept in mind that even in our present statute there is no inhibition against trustees for charitable purposes as such. The proscription is only against nonprofit corporations and to trustees for the use and benefit of such corporations.

Hipp v. Hibbs, 215 Iowa 253, 245 N.W. 247, was decided subsequent to the amendment to the statute. The decedent's will directed that $1000 be set aside for perpetual care of his cemetery lot. The court held that a bequest to trustees for the perpetual care of the cemetery lot did not violate the mortmain statute even though the lot was located in a cemetery owned by a nonpecuniary corporation. The court commented "Nothing is given by the terms of the will to the society, nor is the sum given to be employed for its use and benefit." (Loc. cit. 256)

■ We are in accord with the authorities holding that our mortmain statute has no application to a trust or trustees for charitable purposes where the nonprofit corporation to be formed post-mortem is a mere administrative tool.

It is true that nearly all nonprofit corporations are in a generic sense charitable in that they operate for groups to be aided or purposes other than profit. It is also plausibly argued that the procedure approved by the authorities and followed by the testator here permits the accomplishment by indirect means what is not permitted directly. In other words a legal gimmick. The simple answer is that the statute does not limit gifts to trustees for charitable purposes when there is no nonprofit corporation to be benefited in being but only a plan to be consummated in the future as an administrative detail.

When the will of B. J. Palmer was drawn, when the rights of the beneficiaries thereunder became fixed by testator's death and when the will became operational by admission to probate, there was no corporation against which the statute erected a bar. Until then the formation of a corporation had been only a minute detail in the mind of the testator to aid in the fruition

of his "long and cherished aim and purpose." It is not for us to read into the statute something that is not there to frustrate testator's "aim and purpose."

 VII. As stated in previous divisions our law favors upholding charitable trusts. The power of a testator in disposing of his property under our Wills statute, section 633.1, is broad. Eckles v. Lounsberry, 253 Iowa 172, 185, 111 N.W.2d 638. Limitations thereon such as appear in our mortmain statute and the rule against perpetuities are strictly construed. They may not by judicial interpretation be made to include situations which by a different wording of the statute might have been made germane. In re Estate of Cleven, supra, Randleman v. Williams, 196 Iowa 538, 194 N.W. 964, and Ross v. Alleghany Theological Seminary, 204 Iowa 648, 215 N.W. 710.

 VIII. It has been held in Iowa that gifts to charitable uses do not come within the prohibition of the statute against perpetuities. Wilson v. First National Bank of Independence, 164 Iowa 402, 412, 145 N.W. 948, Ann. Cas. 1916D 481; In re Estate of Small, 244 Iowa 1209, 1224, 58 N.W.2d 477; In re Estate of Pierce, 245 Iowa 22, 35, 60 N.W.2d 894.

In the case at bar the corporation contemplated by the testator has been formed. Even without such action by the trustees the gift could have been saved by the application of the cy pres doctrine. In Volume IV, Scott on Trusts, section 401.8, page 2882, it is said:

"A common situation is that which arises where a testator leaves property to or in trust for a corporation to be organized after his death for certain charitable purposes. The bequest is valid if the corporation must be organized within the period of the rule against perpetuities. Even if the corporation may not be organized within that period, the bequest is nevertheless valid if the testator had a general intention to devote the property to the specified charitable purposes. In such a case there is an immediate gift to charity subject to no condition precedent, and although the particular mode of application is subject to such a condition, that does not invalidate the gift. Under the doctrine of cy pres the general charitable intention of the

1194

testator will be effectuated, even though the particular method of application specified by him should fail."

See also Restatement of the Law of Trusts 2d, section 399, page 297.

IX. The bequest for beneficial uses in the Palmer will is such as to be within the general classification of charitable bequests. The word "charity" as used in the law has a broad meaning and includes schemes to better the condition of society or any considerable part thereof. "It has been well said that any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightening, benefit, or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience, is a charity." Wilson v. First National Bank of Independence, supra, loc. cit. 412.

X. Summarizing what we have said, the Iowa mortmain statute does not bar the effectuation of the provisions of the Palmer will because the statute does not so provide.

XI. While it is our duty to read and apply the statute as it is and not speculate as to what might have been provided our conclusion does not do violence to any of the purposes for which mortmain statutes have been enacted. No heir is being left in want. The testator has shown no callous disregard for the needs of the natural objects of his bounty. Neither has there been any lapse of memory. The testator refers to the abundant provisions previously made for his only heir. The will itself shows that there was no deathbed solicitation by or in behalf of the charitable beneficiaries. The will was not an act in extremis.

XII. Plaintiff's petition sought a declaration that the will of B. J. Palmer was invalid to the extent that it leaves more than one fourth of the estate after payment of debts to trustees for the use and benefit of a corporation not for profit and that to that extent the residuary clause be set aside and the executors and trustees be ordered to pay over and distribute that portion to plaintiff.

Defendants' answer challenged the legal sufficiency of plaintiff's petition on the ground (among others) that Code

section 633.3 did not apply to the will of the testator. The trial court struck this division of defendants' answer. Several other defenses were interposed but need not be considered.

We conclude and accordingly hold that Division II of defendants' answer constituted a good and legal defense to plaintiff's petition and the petition should have been stricken as not stating a legal cause of action.

The case is reversed and remanded for the entry of judgment and decree in accordance herewith.—Reversed and remanded.

All JUSTICES concur except HAYS, J., who dissents.

HAYS, J. (dissenting)—I respectfully dissent.

Section 633.3, Code of Iowa, referred to as the Mortmain statute, is simply a statement of public policy in which the financial need of the survivor is not involved, although the majority opinion places great stress thereon. Decker v. American University, 236 Iowa 895, 20 N.W.2d 466.

The statute is as follows: "No devise or bequest to a corporation organized under the chapter relating to corporations not for profit or to a foreign corporation of a similar character, or to a trustee for the use or benefit of any such corporation, shall be valid in excess of one-fourth of the testator's estate after the payment of debts, if a spouse, child, child of a deceased child, or parent survive the testator." It is conceded by all parties that a child does survive and that by the terms of the will the entire estate goes to charity. The question is not whether the bequest is void but whether more than one fourth of the estate shall pass thereunder. In my judgment, the lengthy and learned discussion, in the majority opinion, upon the question of approval of charitable trusts by the courts, is in no way pertinent to the question here to be decided.

It should be noted that section 633.3, states "bequest to a corporation organized under the chapter relating to corporations not for profit". The majority opinion has this to say as to that statement: "The simple answer is that the statute does not limit gifts to trustees for charitable purposes *when there is*

*no nonprofit corporation to be benefited in being* but only a plan to be consummated in the future as an administrative detail." (Italics added.) It further states: "We are in accord with the authorities holding that our mortmain statute has no application to a trust or trustees for charitable purposes where the nonprofit corporation to be formed post-mortem is a mere administrative tool." Not one authority is cited upon this proposition and I have been unable to find any that will support such a statement.

Nowhere in the statute is there a word tending to restrict the corporation to one that is already in existence, which seems to be the interpretation placed thereon by the majority opinion. The will in question specifically directs that the trustees cause such a nonprofit corporation to be organized. Testator recognizes that such a charity as he proposes to create is not in existence. It may be, as the majority opinion indicates and as counsel and testator thought in the drafting of the will, that the mortmain statute should apply only to *existing* nonprofit corporations but certain it is that it does not say so, and as the court so frequently says "It would have been so very easy for the legislature to so say, if that is what it meant."

What does the will provide?

It gives the entire estate to named trustees for stated uses and purposes:

(1) Directs the trustees as soon as possible to organize an Iowa nonprofit corporation.

(2) Directs the trustees to convey all trust assets to the corporation thus formed.

(3) Directs trustees in the organizing of the corporation to include in its articles and bylaws such authority and provisions as, in their judgment (the organizers), will be in the best interests of the public and for the advancement of the chiropractic philosophy, science and art.

(4) Gives the trustees (as organizers) the right to create a corporation, as in their judgment, would comply with and meet the desires of the testator. There is nothing therein that bestows upon the trustees more power than any group causing a corpo-

ration to be formed exercises, except that as trustees the judg-
ment they exercise in such organization is, in effect, that of
testator as they believe it to be instead of their own.

(5) It gives the trustees absolute right and power to handle the
investment of the trust assets as they see fit but it is significant
that nowhere in the will are they given power to make any
expenditures out of the trust funds, other than costs of pre-
serving the assets and the cost of causing the corporation to
be organized. Their right to handle and preserve the assets
must of necessity terminate upon the establishment of the corpo-
ration at which time they must be given to it. The power of the
trustees, as such, relative to such trust will then be at an end.

I am unable to follow the reasoning of the majority that this
corporation, when formed, will be merely "an administrative
tool". Under section 504.1, Code of Iowa, and also under para-
graph (b) of Article X of decedent's last will, the trustees are
authorized to name themselves as initial directors, trustees or
officers of said corporation. Under section 504.2, upon comply-
ing with the statute, the group so incorporating becomes a
body corporate, while by section 504.14 the affairs of the corpo-
ration are run by the directors and officers. Thus, the trustees,
so named, may in effect dictate and manage the corporate
affairs, but they do so as officers of a corporate body and not
as trustees under the will. The idea espoused by the majority
opinion, i.e., the corporation is an administrative tool, is to
cast aside the legal attributes of a corporation and to continue
the trustees as the managing power with the right to handle,
as trustees, the funds conveyed to the corporation under the
terms of the will. Under the majority opinion the corporation
is to be merely a "dupe" even though it and it alone will have
the control and ownership of the trust funds. Such a view is
not in my judgment a legal or sound interpretation to place
upon the will. If the trust estate was to be administered by
the trustees, why the provision for the creating of the corpora-
tion?

Article X of the will, paragraph (a), says "to effectuate
my aim and purpose I *direct* the Trustees, as soon as possible

after my decease, to cause a nonprofit corporation to be organized * * *, and upon the organization thereof, to *transfer * * * the Trust Estate * * * to said corporation.*" (Italics added.) This clearly is as much of a trust for the use of the corporation i.e., the Museum, as if it were to go to the Red Cross or the American Legion. The trustees held it for such a beneficiary, i.e., "The B. J. and Mabel H. Palmer Memorial" even though the duration of the trust would be short, i.e., until the Memorial could be organized under chapter 504 of the Code. Such a trust would be valid even though the beneficiary was not in being at the time of the creation thereof. 54 Am. Jur., Trusts, section 139. Such would certainly be a trust for the use of the "Memorial" although it might be argued that the benefits would be for the public.

The opinion cites Hipp v. Hibbs, 215 Iowa 253, 245 N.W. 247. The court there said a bequest to trustees for perpetual care of a cemetery lot did not violate the mortmain statute even though the lot was located in a cemetery owned by a nonpecuniary corporation. The cemetery was owned by a church society. The will gave a sum direct to trustees who were to hold and control it and pay for the care of the cemetery lot. That is a far different situation from here, where by the terms of the will the entire trust estate goes to the corporation to be by them used in the carrying out of the "Memorial". The contrast between the cited case and the instant is to say the least enlightening. See Hastings v. Rathbone, 194 Iowa 177, 188 N.W. 960, 23 A. L. R. 392.

In my opinion the mortmain statute, section 633.3, is applicable here as to the balance of the estate in excess of one fourth and I would affirm the ruling of the trial court.